URBAN RENEWAL AND COMMUNITY DEVELOPMENT AGENCY OF LOUISVILLE, a Public Entity, Appellant,

v.

INTERNATIONAL HARVESTER COMPANY OF DELAWARE, Appellee.

Court of Appeals of Kentucky.

May 29, 1970.

Robert W. Zollinger and Dennis J. Haugh, Garner M. Petrie, Michael V. Hargadon, and Gerald F. McDaniel, Louisville, for appellant.

O. Grant Bruton and Hubert T. Willis, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellee.

Joseph E. Stopher and William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, amicus curiae.

CULLEN, Commissioner.

The Urban Renewal and Community Development Agency of Louisville brought suit under KRS 99.420 to condemn a parcel of land owned by International Harvester Company of Delaware, lying on the north side of Walnut Street between 13th Street and 14th Street, in Louisville. Harvester contested the right of condemnation, asserting that Urban Renewal had led Harvester to believe that the parcel would not be condemned, as a result of which belief Harvester had invested large sums in land and improvements on the south side of Walnut Street for business operations in which the parcel on the north side of the street was essential, wherefore Urban Renewal should be *estopped* to condemn the parcel. After a trial without a jury, the court upheld Harvester's defense of estoppel and entered judgment dismissing the action. Urban Renewal has appealed from that judgment.[1] Porter Paint

---

1. The decisions in Cartmell v. Urban Renewal & Community Development Agency, Ky., 432 S.W.2d 445, and Anderson v. Urban Renewal & Community Development Agency, Ky., 436 S.W.2d 533, that a judgment *upholding* a renewal agency's right of condemnation is not appealable, are not authority for the proposition that a judgment *denying* the right of condemnation is not appealable. The reasoning of those decisions was that to allow an appeal from a judgment *upholding* the right to condemn would frustrate the statutory objective of allowing immediate possession and expeditious development. Of course to allow an appeal from a judgment *denying* the right to condemn would *promote* the statutory objective.

Company, to which Urban Renewal has contracted to sell the parcel sought to be condemned, has been permitted to file brief amicus curiae.

For many years Harvester has operated a truck sales-and-service business on Walnut Street, between 13th Street and 14th Street. Its headquarters and service facilities have been housed in buildings located on the south side of Walnut Street, and the parcel here in issue, on the north side of Walnut, has been used as a display and sales lot.

In 1962 a renewal plan was adopted for an area in Louisville embracing the blocks in which Harvester had its properties, and the Urban Renewal and Community Development Agency commenced to carry out the plan. At that time Harvester owned and occupied two small one-story buildings near the center of the block south of Walnut, and a four-story building adjoining them in the west. The parcel on the north side of Walnut was paved, fenced, and had a small office for salesmen. On the renewal-plan plats and records all of Harvester's properties were marked "Not to be Acquired," thus indicating that they were not contemplated to be needed to be acquired to accomplish the purposes of the plan.

Harvester was interested in acquiring the portion of the block in which its buildings were located, adjoining its one-story buildings on the east and the south, and shortly after the renewal plan was adopted Harvester commenced negotiating with Urban Renewal for the purchase of that property. Finally, in the summer of 1964, a firm contract was entered into for the sale of that property to Harvester, by Urban Renewal. Harvester made a down payment in June 1965. The transaction was not closed, however, until December 15, 1965, when the deed was delivered and the balance of the purchase price was paid.

The purchase price for the land so acquired by Harvester was $81,000. After its acquisition Harvester constructed a new sales building on a portion of it, at a cost of some $300,000. The building was completed in 1966, and shortly after its completion Harvester sold to a moving and storage company the four-story building lying to the west of its other properties on the south side of Walnut.

During the period from 1962 through 1966 it appears that the only *mention* of the parcel on the north side of Walnut, in oral or written communications between Harvester and Urban Renewal, consisted of discussions of the possibility of working out an agreement for a *trade* of that parcel for land owned by Urban Renewal on the east side of 13th Street. Those discussions began some time before May 1965, but no agreement for a trade ever was reached.

During this period the parcel on the north side of Walnut continued to be designated "Not to be Acquired," on the official plats of Urban Renewal. However, in January 1965 the planning map was amended to designate the parcel "To be Acquired;" in August 1965 the governing board of Urban Renewal passed a resolution recommending amendment of the *plan* so as to include such designation; and on December 3, 1965, Urban Renewal contracted with Porter Paint Company to sell the parcel, when acquired, to that company. However, Harvester disclaimed any knowledge of the proposed amendments or the contract (all of which occurred before the closing of the sale of land to Harvester).

In January 1967 the renewal plan officially was amended to provide for acquisition of the parcel here in issue. Thereafter Urban Renewal had appraisals made and offered to buy the parcel at the highest appraisal. Harvester refused to sell, whereupon the instant condemnation suit was brought.

There is no evidence that Urban Renewal ever made any promise or assurance to Harvester that the parcel on the north side of Walnut would never be taken. Nor is there any evidence that Harvester ever informed Urban Renewal that the parcel was

essential and vital to Harvester's operations. In fact, as hereinbefore noted, there simply never was any mention of the parcel in negotiations between Harvester and Urban Renewal, except in regard to the possibility of working out a trade of the parcel for other land. Harvester's claim of having been led to believe that the parcel would never be condemned rests solely upon the fact that in the plan documents the parcel continued to be designated as "Not to be Acquired" when Harvester made its large outlay for new land and buildings.

Harvester's theory of estoppel is simply that the parcel on the north side of Walnut is essential to its business operations, and Harvester would not have purchased from Urban Renewal the new land on the south side of Walnut, and erected an expensive building upon it, had Harvester known that Urban Renewal would try to condemn the parcel on the north side.

The significant findings of fact by the trial court were:

"A truck display lot has been used by those people (Harvester), and it would appear to me that it would be essential to the business to have a display lot, and they (Urban Renewal) are a little late now in coming in, after they had sold the property to the people at International Harvester and they had put the improvements on it * * * Now they did this all in good faith, the Urban Renewal did * * * I also say that International Harvester in my opinion has acted in good faith * * *.

" * * * Having sold that property to the International Harvester Company, they (Urban Renewal) ought not to be allowed to condemn that lot * * * they did not intend really to do anything at first with it, it must have been an after-thought * * *

"* * * since (Urban Renewal) sold that property to these people and did not talk about this other piece of

property on the north side of Walnut Street, the piece that is in controversy here, (Urban Renewal) cannot now come along and condemn that property."

It will be observed that there is no finding of bad faith or misrepresentation of fact or intent, there is only the finding that Urban Renewal sold the land on the south side of Walnut to Harvester "and did not talk about this other piece of property."

In our opinion the facts of this case fall far short of establishing a basis for an estoppel.

■ To begin with, it must be remembered that only in exceptional circumstances is estoppel invocable against a *governmental agency*. See Maryland Casualty Company v. Magoffin County Board of Education, Ky., 358 S.W.2d 353. Secondly, estoppel almost never is invoked against *condemnation* by a governmental unit. See Chesapeake & Ohio Ry. Co. v. Greenup County, 6 Cir., 175 F.2d 169. This is because the power of condemnation is not susceptible of abridgement even by specific agreement. See City of Louisville v. Milton, Ky., 247 S.W.2d 975; State of Georgia v. City of Chattonooga, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796. It would seem also that ordinarily there should be little equitable basis for an estoppel against a condemnation, because the condemnee is entitled to be paid, in the condemnation proceeding, the full market value of the property taken from him. So, in order to invoke an estoppel in the instant case, exceptional and extraordinary equities would have to be found. We do not find them and have difficulty even in finding ordinary equities.

■ Harvester bases its whole case on the proposition that it did not know that Urban Renewal would try to *condemn* the parcel in question. We think that is not a sufficient foundation to support the case. Harvester knew, before it paid out any money, that Urban Renewal was consider-

ing *acquiring* the parcel in question, through a trade with Harvester. Thus Harvester knew that the words "Not to be Acquired," on the plan documents, were not being considered as precluding Urban Renewal from *acquiring* the parcel and dealing with it as being within the scope of the renewal plan. Harvester knew that Urban Renewal was considering the *acquisition* of the parcel and therefore must have realized that the parcel was embraceable in the renewal plan. That being so, Harvester was not entitled to *assume* that the parcel would not be subject to acquisition by *condemnation*.

Furthermore, Harvester knew that the renewal plan could be amended, and in fact, in January 1963, in a letter from Harvester to Urban Renewal stating Harvester's interest in purchasing the land south of Walnut Street east of their then existing buildings, Harvester said: "We realize that this may entail some changes in your development plan * * *." Urban Renewal at no time made any suggestion of a commitment that the renewal plan would not be amended, and Harvester had no reason to assume that it would not. Harvester argues that it was entitled to believe that the plan would not be amended to embrace the parcel in question because

(1) Urban Renewal's purpose and function are to renew and rehabilitate; (2) through the sale of the land by Urban Renewal to Harvester in the block *south* of Walnut, followed by Harvester's erection of a new building on that land, the *block south* of Walnut was renewed and rehabilitated; (3) since the parcel owned by Harvester *north* of Walnut was an essential, integral part of Harvester's business operation, the rehabilitation that was accomplished of the block *south* of Walnut effected a rehabilitation of the parcel *north* of Walnut, so there was no occasion for Urban Renewal to be further concerned with that parcel. The tenuousness of that argument is apparent on its face.

We know of no authority for the invoking of an estoppel simply on the basis of unwarranted *assumptions* by the person seeking the estoppel. That is all we have here. There was no misrepresentation, concealment, unfair dealing or overreaching.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

All concur except NEIKIRK, J., who did not sit.