NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Appellant,

v.

KENTUCKY HARLAN COAL CO., INC., Appellee.

No. 92–CA–159–MR.

Court of Appeals of Kentucky.

June 18, 1993.

Discretionary Review Denied by Supreme Court March 16, 1994.

Karen Harpenau Rippy, Frankfort, for appellant.

Rodney E. Buttermore, Jr., Marye V. Campbell, Harlan, for appellee.

Before EMBERTON, GUDGEL and HOWERTON, JJ.

GUDGEL, Judge:

This is an appeal from a judgment entered by the Harlan Circuit Court concluding that appellant Natural Resources and Environmental Protection Cabinet (cabinet) erred by assessing a regulatory penalty against appellee, the operator of a coal washing plant. The cabinet contends that the trial court erred (1) by concluding that KRS 350.090, KRS 350.028, 405 KAR 18:140, and 405 KAR 1:010(64) are unconstitutionally overbroad and violate appellee's due process guarantees, (2) by concluding that appellee was unconstitutionally deprived of its property in violation of the Fifth Amendment, (3) by concluding that the cabinet was estopped from pursuing the current enforcement action, (4) by concluding that the penalty assessed against appellee was arbitrary and not based upon substantial evidence, and (5) by taking judicial notice of certain alleged facts. We agree with all of the cabinet's contentions. Hence, we reverse and remand.

The parties stipulated the basic facts involved in this proceeding. Briefly, as a result of its coal washing procedures, appellee accumulates quantities of shale, slate, and other rock materials. Although these materials constitute coal processing waste pursuant to the definitions set out in 405 KAR 7:020, they are not environmentally hazardous in and of themselves, and they are marketable as fill materials.

In April 1981, the cabinet issued a notice of noncompliance alleging that appellee had illegally dumped waste rock materials outside of the areas authorized by its permits. The proceeding was subsequently dismissed on the ground that appellee had not violated the applicable law.

Similarly, in October 1986 a notice of noncompliance was issued after a cabinet inspector observed appellee dumping waste rock materials into a residential yard for use as fill material. On November 12, appellee again was observed dumping waste materials at the residential site. The inspector then traveled to the cabinet's regional office, where a hearing was being conducted on a petition for temporary relief from the October notice of noncompliance. The inspector tendered a cessation order to appellee's representative who, as stipulated, "said that he would prefer to wait until after a decision on the Petition for Temporary Relief was made prior to dealing with a Cessation Order. The inspector then stated that it would be mailed to him in any event." However, the cessation order was not mailed from the regional office until November 26 and was not received by appellee until December 2, 1986. Appellee then immediately commenced the required reclamation, and the violation was considered abated as of December 2.

After preliminary and formal hearings were conducted, it was recommended that appellee should be assessed a $16,900 penalty for its failure to timely remedy the cited violations. The secretary of the cabinet subsequently adopted the recommendation. On appeal, the circuit court ordered the cabinet to vacate the cessation order and to refund any penalties paid by appellee. This appeal followed.

First, appellant contends that the circuit court erred by finding that KRS 350.090, KRS 350.028, 405 KAR 18:140, and 405 KAR 1:010(64) are unconstitutionally overbroad and violate appellee's due process guarantees. We agree.

The circuit court concluded in pertinent part:

A. That 405 KAR 18:140, KAR 405:010(64)(2) (correct cite is 405 KAR 1:010(64)), KRS 350.090 and KRS 350.028 are unconstitutionally overbroad in that they regulate harmless materials by virtue of the fact that they are byproducts of coal processing.

B. That the regulation of environmentally harmless materials, simply by virtue of the fact that they are byproducts of coal processing, is not consistent with the legislative purpose of the statutes and regulations, to wit, to protect the environment of Kentucky.

These conclusions must be analyzed in light of the fact that a statute will be adjudged facially overbroad only where the overbreadth is "not only … real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). As noted in *Caretenders, Inc. v. Commonwealth*, Ky., 821 S.W.2d 83, 88 (1991), "a challenge for overbreadth must fail unless the law prohibits a substantial amount of constitutionally protected conduct."

Here, appellee concedes that the circuit court erred by holding subsections (1) and (2) of KRS 350.090, as well as any portions of 405 KAR 18:140 other than Section 1(1), to be unconstitutional. Moreover, appellee concedes that KRS 350.028 should be held unconstitutional only insofar as it applies to coal processing waste. Hence, the limited question before us is whether KRS 350.090(3), 405 KAR 18:140 Section 1(1), 405 KAR 1:010(64), and KRS 350.028 are unconstitutionally overbroad insofar as they purport to regulate the use and disposal of the byproducts of appellee's coal washing plant activities.

Clearly, the government of Kentucky has accepted the right and responsibility to protect the environment and the people of Kentucky from the potentially harmful effects of surface coal mining. As stated in KRS 350.-020,

unregulated surface coal mining operations cause soil erosion, damage from rolling stones and overburden, landslides, stream pollution, the accumulation of stagnant water and the seepage of contaminated water, increase the likelihood of floods, destroy the value of land for agricultural purposes, destroy aesthetic values, counteract efforts for the conservation of soil, water and other natural resources, destroy or impair the property rights of citizens, create fire hazards, and in general create hazards dangerous to life and property, so as to constitute an imminent and inordinate peril to the welfare of the Commonwealth.

In furtherance of the government's role, KRS 350.028 sets out the cabinet's authority and powers to investigate and regulate surface coal mining operations which, by definition, include the types of activities conducted at appellee's coal washing plant. *See* KRS 350.010(1). However, any action taken by the cabinet pursuant to KRS Chapter 350 "must stand as an environmental conservation measure." *Department for Natural Resources v. Stearns Coal and Lumber Co.*, Ky., 563 S.W.2d 471, 473 (1978).

KRS 350.090(3) provides that:

No permittee, operator, or person shall throw, dump, pile, or permit the dumping, piling, or throwing, or otherwise placing any overburden, stones, rocks, coal, particles of coal, earth, soil, dirt, debris, trees, wood, logs, or any other materials or substances of any kind or nature beyond or outside of the area of land which is under permit and for which bond has been posted under KRS 350.060 or place these materials in such a way that normal erosion or slides brought about by natural physical causes will permit the materials to go beyond or outside of the area of land which is under permit and for which bond has been posted under KRS 350.060.

405 KAR 18:140 Section 1(1) requires that:

All coal processing waste shall be transported and placed in a manner approved by the cabinet in disposal areas approved by the cabinet for this purpose. These areas shall be within a permit area. The disposal area shall be designed, constructed, and maintained:

(a) In accordance with this regulation and the criteria set forth in 405 KAR 18:130, Sections 1 and 2; and

(b) To prevent combustion.

Finally, 405 KAR 1:010(64) defines "waste" as meaning:

earth materials, which are combustible, physically unstable, or acid-forming or toxic-forming, washed or otherwise separated from product coal and are slurried or otherwise transported from coal processing facilities or preparation plants after physical or chemical processing, cleaning, or concentrating of coal.

However, as it appears to be uncontroverted that 405 KAR 1:010(64) was not applicable to appellee's operations at the time in question as that provision now relates only to interim permits, the applicable definitions instead are those set out in 405 KAR 7:020, as follows:

(19) "Coal mine waste" means coal processing waste and underground development waste.

. . . .

(21) "Coal processing waste" means materials which are separated from the product coal during the cleaning, concentrating, or other processing or preparation of coal.

. . . .

(134) "Underground development waste" means waste coal, shale, claystone, siltstone, sandstone, limestone, or similar materials that are extracted from underground workings in connection with underground mining activities.

The trial court concluded that the statutes and regulations in question are unconstitutionally overbroad because they fail to distinguish between those coal mining waste products which are inherently harmful to the environment, such as combustible, toxic, acid-forming or unstable materials, and those which in and of themselves are harmless and potentially useful materials. However, as noted in KRS 350.020, concerns relating to surface coal mining and its byproducts are not limited to the effects of pollution-producing materials. Clearly, as noted in KRS 350.020, legitimate governmental concerns also exist regarding "soil erosion, damage from rolling stones and overburden, landslides," or other problems which could result from the improper storage or disposal of even those noncoal rock waste materials which otherwise are harmless and/or useful types of coal mine waste. We therefore are not persuaded that the challenged statutes and regulations, by prohibiting the unregulated disposal of earth materials separated from coal at appellee's coal washing facility, were unconstitutionally overbroad as having prohibited "a substantial amount of constitutionally protected conduct." *Caretenders, supra* at 88. *See also Broadrick, supra.* Moreover, in view of this conclusion, it follows that the circuit court also erred by concluding "[t]hat as a result of such overbroad statutes and regulations," appellee "has been deprived of his property without due process of law." This is especially true in view of the fact that appellee admittedly failed to avail itself of the procedures set out in 405 KAR 7:060, regulating experimental mining practices, pursuant to which permission might have been obtained to dispose of the fill material off of the permitted site.

■ Next, appellant contends that the trial court erred by finding that appellee was unconstitutionally deprived of its property in violation of the Fifth Amendment's prohibition against the taking of private property for public use without just compensation. We agree.

The United States Supreme Court has consistently distinguished between situations in which a government physically and permanently occupies or takes title to property, or in effect destroys the claimant's rights in property, and those in which the government merely regulates the use of the property. Certainly, governments are entitled to regulate landowners' use of property, and compensation generally is required as a result of regulations

only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole.

*Yee v. City of Escondido, California,* —— U.S. ——, ——, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992). *See also Lucas v. South Carolina Coastal Council,* —— U.S.——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Penn Central Transportation Co. v. City of New*

*York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

Here, the cabinet did not in any way attempt to deprive appellee of its ability to operate its coal washing plant, or to physically deprive appellee of either the coal processing waste or its rights in those materials. Instead, the disputed action was merely taken in regulation of "the conditions under which such operations may be conducted," *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 296, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981), and there is no indication either that the cabinet's action interfered with " 'reasonable investment backed expectations,' " *id.,* 452 U.S. at 295, 101 S.Ct. at 2352 (citation omitted), or that appellee availed itself of its right to seek alternative administrative relief. Accordingly, we are not persuaded that the circumstances leading to this action unconstitutionally denied appellee of the " 'economically viable use of' " its land, *Hodel,* 452 U.S. at 296, 101 S.Ct. at 2370 (citation omitted), or constituted a "taking" of property so as to entitle appellee to just compensation.

■ Further, we are not persuaded by appellee's argument that a different result should be reached on equal protection grounds, in view of appellee's failure to substantiate its assertion that the regulations in question are arbitrary or that those who produce coal processing waste are treated differently from others who might be similarly situated. *Cf. Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985). Granted, appellee is correct in stating that the statutes and regulations in question here do not regulate "other harmless or even harmful materials" such as those produced by "those who mine clay, stone, sand and gravel, those who process reddog, power plants who sell fly ash residue from burned coal, sellers of used tires, and garbage." However, as noted in appellant's brief, other statutes and regulations clearly do regulate those substances, much as coal processing waste is regulated:

KRS 350.240, 405 KAR 5:010 (requires clay miners to submit a plan, obtain a permit and handle wastes in a manner reducing the adverse effects to the environment and public); 405 KAR 5:020 (requires those operating flourspar [sic], sand, gravel, stone or rock asphalt mines to submit an application with a mining plan, obtain a permit, and handle mining waste in a manner minimizing harmful effects to people and the environment); KRS 224.01–010(31), KRS 224.40–305, 401 KAR Chapters 47 and 48 (used tires and garbage are subject to regulation as solid waste) and KRS 224.50–760, 401 KAR Chapter 45 (fly ash subject to permitting process for its disposal); and 30 C.F.R. 817.87 and 405 KAR 18:140 (prior approval required for disposal of reddog).

Moreover, the fact that consumers of various materials such as coal, gravel, or coal ash need not obtain permits before using those materials is irrelevant to appellee's equal protection argument, as the purchasers and consumers of such regulated materials clearly are not similarly situated to those who generate large quantities of coal processing waste.

■ Next, the cabinet contends that the circuit court erred by holding that the cabinet was estopped from pursuing its 1986 enforcement action based upon "the same or similar conduct for which a Cessation Notice was dismissed some five years" earlier. We agree.

■ Kentucky's highest court held in *Electric & Water Plant Board of the City of Frankfort v. Suburban Acres Development, Inc.,* Ky., 513 S.W.2d 489, 491 (1974), as follows:

The essential elements of equitable estoppel are "(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of

knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice." 28 Am.Jur.2d *Estoppel and Waiver* § 35 and *Smith v. Howard,* Ky., 407 S.W.2d 139 (1966).

However, the doctrine of equitable estoppel may be invoked against a governmental agency only under exceptional circumstances. *See Urban Renewal and Community Development Agency of Louisville v. International Harvester Co. of Delaware,* Ky., 455 S.W.2d 69 (1970); *Cross v. Commonwealth, ex rel. Cowan,* Ky.App., 795 S.W.2d 65 (1990); *City of Shelbyville, ex rel. Shelbyville Municipal Water and Sewer Commission v. Commonwealth, Natural Resources and Environmental Protection Cabinet,* Ky.App., 706 S.W.2d 426 (1986). Moreover, a public officer's failure "to correctly administer the law does not prevent a more diligent and efficient" officer's proper administration of the law, as "[a]n erroneous interpretation of the law will not be perpetuated." *Delta Air Lines, supra,* 689 S.W.2d at 20.

Here, even if it is assumed that the 1986 enforcement action was indeed based on the "same or similar conduct for which a Cessation Notice was dismissed some five years" earlier, the elements of estoppel have not been met. In the first place, regardless of any changes in the law or mistakes by state officials at the time of the first enforcement action, there is nothing in the record here to indicate that exceptional circumstances existed, *Urban Renewal, supra,* or that the cabinet engaged in any conduct which either amounted "to a false representation or concealment of material facts" or was intended to "convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert." *Electric & Water Board Plant, supra* at 491. *See also Hunts Branch Coal Co. v. Canada,* Ky., 599 S.W.2d 154 (1980). At most, there was an erroneous interpretation of the law as it applied to the situation which existed in 1981. Regardless of how unfortunate any such misinterpretation might have been, any failure to correctly administer the law prior to 1986 did not prevent a more accurate interpretation of the law at a later date. *See Delta Air Lines, supra.* It follows, therefore, that the trial court erred by concluding that the cabinet was estopped from pursuing the 1986 enforcement action based upon the dismissal of the 1981 cessation notice.

■ Next, the cabinet contends that the trial court erred by holding that the penalty assessed against appellee was arbitrary and not based upon substantial evidence. We agree.

■ As noted by appellee, a reviewing court must consider the following three primary factors when determining whether an administrative agency's action was arbitrary:

> The court should first determine whether the agency acted within the constraints of its statutory powers or whether it exceeded them. Second, the court should examine the agency's procedures to see if a party to be affected by an administrative order was afforded his procedural due process. The individual must have been given an opportunity to be heard. Finally, the reviewing court must determine whether the agency's action is supported by substantial evidence. If any of these three tests are failed, the reviewing court may find that the agency's action was arbitrary. (Citations omitted.)

*Commonwealth, Transportation Cabinet, Department of Vehicle Regulation v. Cornell,* Ky.App., 796 S.W.2d 591, 594 (1990).

The first portion of this test was clearly met. KRS 350.990(1) requires that:

> Any permittee, operator, or person who fails to abate a violation noted in ... an order for immediate compliance and cessation within the time period prescribed for the abatement *shall be assessed a civil penalty of not less than seven hundred fifty dollars ($750) for each day* during which the violation continues.... Each day of continuing violation may be deemed a separate violation for purposes of penalty assessment. (Emphasis added.)

Moreover, 405 KAR 7:090 Section 11(2) provides in pertinent part that:

> Whenever a violation has not been abated during the abatement period set forth in a notice of noncompliance and order for remedial measures or in an order for cessation and immediate compliance, a civil penalty of not less than $750 shall be assessed for each day during which such failure to abate continues, up to a maximum of thirty (30) days. .

Hence, in view of the stipulated facts, the cabinet clearly was statutorily authorized to assess a $750 per day penalty against appellee for the failure to timely abate any violations noted in the order for cessation and immediate compliance, and it did not exceed its statutory powers by imposing such a penalty.

Next, contrary to appellee's contention, the record clearly shows that the second portion of the test was met, in that appellee was afforded procedural due process and an opportunity to be heard. The fact that it is stipulated that appellee's representative declined to accept the tendered cessation order, and that appellee did not receive the order by certified mail until twenty days later, does not compel a different conclusion. To the contrary, 405 KAR 12:020 Section 5(2) expressly states that service of such a document, "whether by hand or by mail, shall be complete upon *tender* of the notice or order and shall *not* be deemed incomplete because of *refusal to accept.*" (Emphasis added.) Hence, appellee was adequately served with notice of the order for cessation and immediate compliance on November 12, 1986, the date on which the document was tendered to its representative.

Moreover, the third portion of the test was met in that the cabinet's findings are clearly supported by substantial evidence, as noted above. Since all three prongs of the test described in *Cornell, supra,* have been satisfied, it follows that the circuit court erred by finding that the cabinet's actions were arbitrary and not based upon substantial evidence.

Finally, the cabinet contends that the trial court erred by taking judicial notice of certain alleged facts regarding the location of various businesses upon sites filled by coal processing waste. In light of our conclusions to this point in the opinion, however, we need not address the merits of this issue.

The court's judgment is reversed and remanded with directions to reinstate the cabinet's order of September 8, 1989.

All concur.