RENDERED:  APRIL 3, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0234-MR

JESSICA SANER; BUTLER
LEARNING CENTER, LLC; HEBRON
LEARNING CENTER, LLC;
HIGHLANDS HEIGHTS LEARNING
CENTER, LLC; INDEPENDENCE
LEARNING CENTER, LLC; TAYLOR
MILL LEARNING CENTER, LLC;
AND WALTON LEARNING CENTER,
LLC                                                                    APPELLANTS


                          APPEAL FROM FRANKLIN CIRCUIT COURT
v.                        HONORABLE PHILLIP J. SHEPHERD, JUDGE
                          ACTION NO. 22-CI-00877


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND PUBLIC
CONSULTING GROUP                                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND L. JONES, JUDGES.

JONES, L., JUDGE:  Jessica Saner and her six childcare centers (collectively

Saner) appeal from the Franklin Circuit Court's dismissal of their claims against

the Commonwealth of Kentucky, Cabinet for Health and Family Services

(Cabinet), and Public Consulting Group (Group) for failure to state claims upon

which relief may be granted.  We affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

To help mitigate the impact of the COVID-19 pandemic, the federal

government enacted the American Rescue Plan.  Among other matters, that

legislation made funds available for states to distribute to childcare providers.  The

Cabinet was responsible for distributing those funds in Kentucky.  The Cabinet

entered into contracts with childcare providers which required the providers to

provide monthly data sheets to the Cabinet via a third-party, the Group.

Specifically, in relevant part, the apparently identical contracts

between each of Saner's six childcare centers and the Cabinet provided:

> 5.  The Provider receiving the American Rescue Plan
> funds must complete a monthly data sheet and send it to
> the third party vendor by the 5th of each month.  The data
> sheet will include data on enrollment, staff turnover, and
> other key data points.
>
> . . .
>
> 8.  Each payment is conditioned upon the Provider
> meeting the requirements of this Agreement . . . .

26. There are no third-party beneficiaries, express or implied, to this Agreement.

. . .

28. Nothing contained herein shall be construed to waive the inherent sovereign immunity of the Commonwealth of Kentucky.

Trial Court Record (R.) at 23-26.

According to Saner's complaint, the monthly data sheet submission process was "confusing" and "fraught with problems and issues from almost the beginning. . . ." R. at 9. The gist of Saner's complaint alleges that the Cabinet, via the Group, had previously accepted late timesheets but improperly withheld a $217,503.00 quarterly payment in July 2022 because Saner's April 2022 timesheet was, by her own admission, submitted tardily. Saner then filed the complaint at hand against the Cabinet and the Group, raising claims against each for breach of contract, promissory estoppel, and negligence.

The Cabinet and the Group each filed a motion to dismiss Saner's complaint for failure to state a claim upon which relief may be granted. *See* Kentucky Rule of Civil Procedure (CR) 12.02. The trial court granted both motions in one order.[1] Saner then filed this appeal.

_____

[1] In that same order the trial court also denied Saner's motion to amend her complaint, holding that the proposed amended complaint "cannot cure the deficiencies in the original Complaint." R. at 262. Saner's proposed amended complaint appears to be identical, or nearly so, to the

-3-

## II.  ANALYSIS

As a preliminary matter, we note Saner's brief does not contain a statement showing whether (and, if so, how) she preserved any of the issues in her brief for appellate review.  RAP 32(A)(4) requires the argument section of an appellant's opening brief to "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner."  As we have explained, "[o]ur Supreme Court has strictly mandated compliance with the preservation statement requirements in briefs since its inception under the prior Kentucky Rules of Civil Procedure." *W.I.S. v. K.M.B.*, 722 S.W.3d 569, 576 (Ky. App. 2025) (internal quotation marks and citations omitted).  While RAP 31(H)(1) allows us to strike a brief which fails "to substantially comply with the requirements of these rules[,]" we have elected to proceed with review and not sanction Saner for this deficiency as the trial record is modest and neither Appellee has raised the issue in their briefs.  However, we remind all parties of the importance of including preservation statements and caution them of the risk that a future panel of this Court may not exercise such leniency.

---

original complaint.  In any event, Saner has not directly challenged the denial of her motion to file an amended complaint.

Furthermore, "[w]e have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

## A. Standard of Review

As our Supreme Court has explained:

> A motion to dismiss for failure to state a claim upon which relief may be granted admits as true the material facts of the complaint. So a court should not grant such a motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved. Accordingly, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. This exacting standard of review eliminates any need by the trial court to make findings of fact; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief? Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks, ellipsis, and citations omitted).

## B. Breach of Contract

The elements of a breach of contract claim are "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of

contract." *Metro Louisville/Jefferson Cnty. Government v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009).

### 1. The Group

The entirety of the breach of contract claims against the Group in Saner's complaint is that the Cabinet "breached the Agreements by making it impossible for [Saner] to comply with an essential term of the Agreements, through Defendant Cabinet's own negligence and that of its third-party vendor, [the Group]." R. at 17. Saner's breach of contract claims against the Group fail because the complaint does not allege the existence of any contract(s) between Saner and the Group. *Nave v. Feinberg*, 539 S.W.3d 685, 691 (Ky. App. 2017) ("Nave's claim for breach of contract must fail because no contract existed between her and Dr. Feinberg and Rouse.").

We also reject Saner's hazy argument that she is a third-party beneficiary of the agreements between the Cabinet and the Group. In Kentucky:

> a third party for whose benefit a contract is made may maintain an action thereon; however, he must have been a party to the consideration or the contract must have been made for his benefit, and the mere fact that he will be incidently benefited by the performance of the contract is not sufficient to entitle him to enforce it.

*Ball v. Cecil*, 148 S.W.2d 273, 274 (Ky. 1941).

Even accepting the assertions in Saner's complaint as true, her third-party beneficiary argument fails. Saner has not provided the contract(s) between

the Cabinet and the Group and the complaint does not mention what terms in any such contracts make Saner an intended third-party beneficiary of those agreements. Consequently, Saner has not adequately pleaded a viable third-party beneficiary claim for relief. *Ball*, 148 S.W.2d at 274.

### 2. The Cabinet

The Cabinet asserts it is immune from Saner's breach of contract claims. Sovereign immunity is "an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Louisville Arena Authority, Inc. v. RAM Engineering & Const., Inc.*, 415 S.W.3d 671, 679–80 (Ky. App. 2013) (internal quotation marks and citations omitted). As we have held, "the Cabinet is a statutorily created agency performing an integral function of state government. Thus, the Cabinet is entitled to the protection of sovereign immunity." *Commonwealth v. Samaritan All., LLC*, 439 S.W.3d 757, 761 (Ky. App. 2014).

However, that is not the end of the matter because "KRS [Kentucky Revised Statute] 45A.245 expressly waives sovereign immunity for actions arising under contracts with the Commonwealth." *Id.* at 762. KRS 45A.245 provides in relevant part:

> (1) Any person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth on the contract, including but

> not limited to actions either for breach of contracts or for enforcement of contracts or for both. Any such action shall be brought in the Franklin Circuit Court and shall be tried by the court sitting without a jury. All defenses in law or equity, except the defense of governmental immunity, shall be preserved to the Commonwealth.

As our Supreme Court has held, "KRS 45A.245 is an unqualified waiver of immunity in all cases based on a written contract with the Commonwealth . . . ." *University of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017).

Nonetheless, the trial court properly dismissed Saner's breach of contract claims against the Cabinet because Saner failed to first raise them to the Secretary of the Finance and Administration Cabinet. KRS 45A.230 provides that:

> Prior to the institution of any action in a court concerning any contract, claim, or controversy, the secretary of the Finance and Administration Cabinet is authorized, subject to any limitations or conditions imposed by regulations, to settle, compromise, pay, or otherwise adjust the claim by or against, or controversy with, a contractor relating to a contract entered into by the Finance and Administration Cabinet on behalf of the Commonwealth or any state agency, including a claim or controversy based on breach of contract . . . .

Saner has not cited any authority which exempts the breach of contract claims from the provisions of KRS 45A.230. Therefore, we must consider the language in KRS 45A.235 providing that if a breach of contract claim against the Commonwealth "is not resolved by mutual agreement, the secretary of the Finance and Administration Cabinet, or his designee, shall promptly issue a

decision in writing . . . . The decision shall be final and conclusive unless fraudulent, or unless the contractor sues pursuant to KRS 45A.245."

Though the statutes contain stilted language, their overall impact is clear: breach of contract claims must generally be submitted to the Secretary of the Finance and Administration Cabinet before a party may seek judicial relief against the Commonwealth for the alleged breach. As we explained:

> KRS Chapter 45A, Kentucky's Model Procurement Code, provides that claims or controversies arising under contracts between and among the Commonwealth and its contractors shall be resolved by the written decision of the Secretary of the Finance and Administration Cabinet or his designee. KRS 45A.235. **Following an adverse decision**, an aggrieved party may file a civil action on the contract against the Commonwealth in Franklin Circuit Court. KRS 45A.245(1). The action is to be tried by the court sitting without a jury.

*Geupel Constr. Co., Inc. v. Commonwealth of Kentucky Transp. Cabinet*, 136 S.W.3d 43, 46 (Ky. App. 2003) (emphasis added).

Saner filed this action against the Cabinet without having first presented the breach of contract claims to the Secretary of the Finance and Administration Cabinet. Therefore, we agree with the trial court that Saner failed to exhaust her administrative remedies before seeking judicial relief.

"[E]xhaustion of administrative remedies is required prior to resort[ing] to the courts." *Kentucky State Police v. Scott*, 529 S.W.3d 711, 716

-9-

(Ky. 2017). A court lacks jurisdiction to resolve claims when a party has not exhausted his or her administrative remedies, unless one of the three narrow exceptions to the exhaustion requirement applies. *Id.*

The three exceptions are: "(1) a party demonstrates the futility of continuing the administrative process, (2) a statute authorizes direct judicial relief, and (3) a party challenges the constitutionality of a particular regulation or statute on its face." *Id.* Saner argues that the pandemic meant it would have been futile for her to seek administrative relief, but she does not adequately explain that assertion. The COVID-19 pandemic upended life for everyone, but Saner has not adequately explained how the pandemic made it inherently futile for her to present her breach of contract claims to the Secretary of the Finance and Administration Cabinet. Moreover, Saner does not cite to specific language in the American Rescue Plan requiring participating states to allow parties receiving those funds to sue a state in state court without first exhausting administrative remedies.

Finally, the authorities cited by Saner are materially distinguishable. We decline to unnecessarily lengthen this Opinion by discussing each of them. By way of representative example, the federal cases cited by Saner generally involve determining whether a state may be sued in federal court without its consent. That issue involves interpretation of the Eleventh Amendment, unlike the case at hand.

In sum, Saner did not exhaust her administrative remedies and has not shown that any of the recognized exceptions to the exhaustion requirement are applicable. Therefore, we affirm the trial court's dismissal of Saner's breach of contract claims against the Cabinet.

## C. Estoppel

Saner's second claim is based on promissory estoppel. The doctrine of promissory estoppel is that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009) (internal quotation marks and citations omitted).

### 1. The Group

We readily affirm the dismissal of Saner's promissory estoppel claims against the Group.[2] First, Saner has not identified a promise made to Saner by the Group. Saner's complaint alleges that the monthly data collection process was confusing and frustrating, but Saner does not denote a specific, tangible promise made by the Group to Saner. For example, Paragraph 63 of Saner's complaint

---

[2] The trial court did not explain why it dismissed the estoppel or negligence claims against the Group. However, findings of fact are not at issue when ruling on motions to dismiss under CR 12.02, *Fox*, 317 S.W.3d at 7, and "we are authorized to affirm the lower court's decision for any reason supported by the record." *Greene v. White*, 584 S.W.3d 299, 304 (Ky. App. 2019). Therefore, we do not need to remand the case to the trial court to make findings as the record and applicable law show that the estoppel and negligence claims against the Group must fail.

only generically states that "Defendants made false promises and representations of fact to Plaintiffs." R. at 17. Second, Saner similarly has not alleged with specificity what actions she took, or declined to take, in reliance upon any promise made by the Group. For example, Paragraph 65 of Saner's complaint only vaguely states that "Defendants' false promises and representations of fact induced action and/or forbearance on the part of [Saner]." *Id.*

Even Saner's brief on appeal does not specify a promise made by the Group nor how Saner acted, or declined to act, in reliance upon that promise. Instead, after reciting the elements of the claim and the standard of review, she simply states: "As clearly laid out, [the Group] deals with 'sustainability payments' (pursuant to Jessica Cain, M.Ed[.] Program Manager, ARPA [American Rescue Plan Act] Funding Division of Child Care Department of Community Based Services) and would be a significant injustice to [Saner] if the promise was not enforced in this matter." Appellants' Brief, p. 9. Without identifying a promise Saner allegedly relied on, she fails to state a claim for promissory estoppel upon which relief may be granted. We affirm the dismissal of the promissory estoppel claims against the Group.

### 2. The Cabinet

The promissory estoppel claims against the Cabinet suffer from the same fatal defects as those against the Group. Saner has not pointed to a specific

promise made by the Cabinet nor what act she took, or refrained from taking, pursuant to that promise. In addition, "it must be remembered that only in exceptional circumstances is estoppel invocable against a governmental agency." *Urban Renewal and Community Development Agency of Louisville v. International Harvester Co. of Del.*, 455 S.W.2d 69, 72 (Ky. 1970). Saner has not adequately alleged exceptional circumstances allowing her to present estoppel claims against the Cabinet. We affirm the dismissal of the estoppel claims against the Cabinet.

### D. Negligence

"In general, negligence claims require proof that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the plaintiff suffered a harm that was proximately caused by the breach." *Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023).

#### 1. The Group

Paragraphs 69 and 70 of Saner's complaint allege the Group and the Cabinet "owed a duty to [Saner] to provide a reliable data sheet submission system" and a duty "to provide reliable and accurate communications with Plaintiffs regarding the status of their data sheet submissions." R. at 18. The Group argues it had no duty towards Saner. Saner does not explain how, or why, the Group purportedly owed to her the duties alleged in the complaint. As previously explained, Saner did not have a contract with the Group and Saner has

-13-

not cited another specific authority which imposed a duty upon the Group towards Saner. We affirm the dismissal of Saner's negligence claims against the Group.

### 2. The Cabinet

The Cabinet argues the trial court properly dismissed the negligence claims against it because Saner failed to exhaust her administrative remedies. The Cabinet would typically have sovereign immunity over Saner's negligence claims, for which she seeks monetary damages, unless the General Assembly has waived that immunity. As our Supreme Court has held, "sovereign immunity protects the state from judicial relief affecting funds in the State Treasury that are the State's money." *Long v. Department of Revenue*, 718 S.W.3d 868, 886 (Ky. 2025) (internal quotation marks and citations omitted). However, the General Assembly has waived sovereign immunity, to an extent, by creating the Board of Claims, *Letcher County Board of Education v. Hall*, 671 S.W.3d 374, 380 (Ky. 2023), and that entity has "exclusive jurisdiction of negligence claims against the Commonwealth . . . ." *Long*, 718 S.W.3d at 886 n.15. *See also* KRS 49.060; 49.070.

However, Saner did not raise her negligence claims in the Board of Claims prior to bringing them in circuit court. As with her breach of contract claims, she therefore has not exhausted her administrative remedies. For the same basic reasons we discussed when affirming the dismissal of the breach of contract

-14-

claims due to Saner's failure to exhaust administrative remedies, we reject Saner's arguments that it was futile or not feasible for her to present her negligence claims to the Board of Claims. We affirm the dismissal of Saner's negligence claims.

### III. CONCLUSION

For the foregoing reasons, the Franklin Circuit Court is affirmed.

ALL CONCUR.

| BRIEF FOR APPELLANTS: | BRIEF FOR APPELLEE COMMONWEALTH OF KENTUCKY, CABINET FOR HEALTH AND FAMILY SERVICES: |
|---|---|
| David L. Drake<br>Independence, Kentucky | |
| | Chris Ballantine<br>Frankfort, Kentucky |
| | BRIEF FOR APPELLEE PUBLIC CONSULTING GROUP, LLC: |
| | Chadwick A. McTighe<br>Alisa Micu<br>Louisville, Kentucky |