ST. LUKE HOSPITALS,
INC., Appellant,

v.

COMMONWEALTH of Kentucky, Cabinet for Health and Family Services; and St. Elizabeth Medical Center, Inc., Appellees.

No. 2004–CA–000692–MR.

Court of Appeals of Kentucky.

June 3, 2005.

Rehearing Denied Aug. 25, 2005.

Discretionary Review Denied by Supreme Court April 12, 2006.

Lisa English Hinkle, Holly J. Turner, Lexington, KY, for Appellant.

Anne Dooling Clarke, Frankfort, KY, for Appellee, Commonwealth of Kentucky, Cabinet for Health and Family Services.

Ann Truitt Hunsaker, Frankfort, KY, for Appellee, Cabinet for Health and Family Services.

Richard G. Meyer, Mathew R. Klein, Jr., Crestview Hills, KY, for Appellee, St. Elizabeth Medical Center, Inc.

Before BARBER, BUCKINGHAM, and JOHNSON, Judges.

## OPINION

BUCKINGHAM, Judge.

St. Luke Hospitals, Inc., appeals from a final order of the Franklin Circuit Court affirming the Cabinet for Health and Family Services' denial of St. Luke's Certificate of Need (CON) application. St. Luke argues that the circuit court's decision is arbitrary and capricious because it is incorrect as a matter of law. Specifically, St. Luke contends that the circuit court erred by affirming the Cabinet's decision even though the decision did not follow long-standing agency interpretation of CON regulations, by not adhering to principles of stare decisis, and by not applying the doctrine of contemporaneous construction. In addition, St. Luke argues that the circuit court violated its due process rights and failed to render an opinion capable of review and that it upheld a decision by the Cabinet that was not supported by substantial evidence. Finding no error, we affirm.

## FACTS

St. Luke is a nonprofit corporation that operates two hospitals in Northern Kentucky. St Luke Hospital East is located in Fort Thomas, and St. Luke Hospital West is located in Florence. St. Luke sought to establish a freestanding, separately licensed ambulatory surgical center (ASC) on its west campus in Florence. It claims that the new facility would contain two operating rooms and that it would shut down two existing operating rooms on the

same campus. Thus, the application did not propose to create additional surgical capacity at St. Luke West or in the geographical service area.

During the seven years between 1996 and 2003, the Cabinet rendered several decisions regarding transfers of surgical capacity on a hospital campus. During that time, it granted several CON applications proposing transfers of surgical capacity from one health facility to a newly licensed facility on the same campus even though the State Health Plan (SHP) criteria under 902 KAR[1] 17:041 were not met. In 1999, in response to the prevailing policy at the time, the Cabinet promulgated a transfer exemption under 900 KAR 6:050E § 7 to grant such transfers. The exemption provided in pertinent part:

(1) Applications proposing to relocate surgical services from one (1) licensed health facility to a newly established or other health facility and either facility is owned by the existing facility with surgical services shall be considered consistent with the State Health Plan if the existing facility has not added to its complement of operating rooms within twelve (12) months prior to filing the application for relocation and the following conditions are met:

a. The newly established surgical services are located:

(i) On the existing facility's licensed premises; or

(ii) In the same county as the existing health facility and where there are no other licensed providers of surgical services in the county; and

b. The existing facility with surgical services which relocated the room and the newly established surgical service shall not add operating rooms for one (1) year following the date that the newly

---

**1.** Kentucky Administrative Regulations.

established surgical services commence operations.

The Cabinet promulgated the exemption to expressly sanction its earlier decisions granting CONs to applicants that did not meet the SHP criteria. However, once the Cabinet decided the proliferation of newly licensed surgical centers was growing too quickly, it repealed the exemption, requiring all new applications to meet the SHP criteria. In other words, between 1999 and 2002, the Cabinet promulgated and then repealed the exemption in response to changing policy based on the needs of the health care community.

On August 30, 2002, the Cabinet conducted a hearing concerning its notice of intent to amend the surgical services criteria. St. Luke proposed an amendment that would allow nonsubstantive review for projects proposing transfers of existing surgical capacity to newly licensed facilities on the same campus. Nonsubstantive review would eliminate the requirement that St. Luke's CON application satisfy the criteria required by the SHP. *See* 900 KAR 6:050, § 8(5). The Cabinet did not accept the amendment and denied nonsubstantive review, stating that hospitals already have the ability to transfer services on an existing license without a CON. *See Cabinet for Human Resources, Interim Office of Health Planning and Certification v. Jewish Hospital Healthcare Services, Inc.,* 932 S.W.2d 388, 390–91 (Ky. App.1996). The Cabinet said the policy behind repealing the transfer exemption precluded nonsubstantive review of CONs for ASCs like the one St. Luke proposed. That policy is to prevent proliferation of unneeded separately licensed ASCs.

St. Luke filed its CON application on October 2, 2002, pursuant to KRS[2]

216B.061(1)(a)[3]. On the following day, T.J. Samson Medical Center, an acute care hospital located in Glasgow, Kentucky, filed a similar CON application. On February 13, 2003, the Cabinet held a hearing on St. Luke's application. St. Elizabeth Medical Center contested St. Luke's compliance with the SHP concerning utilization of 85% of surgical capacity in the service area, which is necessary for obtaining a CON. St. Luke admitted that surgical utilization in its service area was only 44.37% of capacity. Although it was applying for a new license, St. Luke maintained that the SHP criteria did not apply because it was transferring existing surgical capacity and thus was not establishing a health facility pursuant to the statute or a "new surgical service" under the SHP.

St. Luke relied on Cabinet precedent for allowing transfers of health services without a CON over a period of seven years (1996–2003). As noted above, that precedent was continued when the Cabinet promulgated the transfer exemption in 1999. However, the exemption was repealed on June 28, 2002, four months before St. Luke's application.

T.J. Samson's CON application was approved on February 19, 2003. However, the Cabinet denied St. Luke's application on May 19, 2003, on the grounds that it was proposing a new surgical service and was inconsistent with three of the five SHP criteria. The hearing officer noted that St. Luke could transfer the surgical services under its existing license without having to obtain a CON. *See Jewish Hospital Healthcare Services, Inc.,* 932 S.W.2d at 390–91. The hearing officer also concluded that the T.J. Samson case had been wrongly decided.

---

2. Kentucky Revised Statutes.

3. KRS 216B.061(1)(a) requires that a CON be obtained before establishing a health facility.

St. Luke appealed the Cabinet's decision to the Franklin Circuit Court. The circuit court affirmed, finding that St. Luke's application was subject to the SHP and did not meet the SHP's first criterion. The court did not review the other criteria addressed by the Cabinet. This appeal followed.

## STANDARD OF REVIEW

■■■ "The findings of fact of an administrative agency, which are supported by substantial evidence of probative value, must be accepted as binding by the reviewing court." *Kosmos Cement Co., Inc. v. Haney,* 698 S.W.2d 819, 820 (Ky.1985). Substantial evidence is that which "when taken alone or in light of all the evidence has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972). "The duty of the court is to determine whether the agency misapplied the correct rule of law to the facts as found." *Kosmos,* 698 S.W.2d at 820.

■■■ "[T]he failure to grant administrative relief to one carrying the burden is arbitrary if the record compels a contrary decision in light of substantial evidence therein." *Bourbon County Bd. of Adjustment v. Currans,* 873 S.W.2d 836, 838 (Ky. App.1994). The burden is on the party claiming an exemption to demonstrate its entitlement to the exemption and that it has met all statutory requirements. *Camera Center, Inc. v. Revenue Cabinet,* 34 S.W.3d 39, 41 (Ky.2000).

"The Cabinet is a state agency authorized by statute to administer the CON program consistent with the [SHP]." *Cabinet for Health Services v. Family Home Health Care, Inc.,* 98 S.W.3d 524, 527 (Ky. App.2003), *citing* KRS 216B.010. "In carrying out this function, the Cabinet is required to promulgate administrative regulations 'to establish criteria for issuance and denial of certificates of need.'" *Id., citing* KRS 216B.040(2)(a)2.

The specific provision at issue in this case, KRS 216B.061(1)(a), provides that a licensed health provider such as St. Luke must obtain a CON before establishing a health facility. St. Luke seeks a newly licensed ASC. Thus, under the statute, it must obtain a CON. Further, its CON must be consistent with the SHP. *See* KRS 216B.040(2)(a).

St. Luke admits that its proposal was inconsistent with the SHP criterion that requires a utilization rate of 85% of capacity in the service area before a new CON will be approved. However, it argues that it is exempt from complying with SHP criteria due to a long-standing Cabinet interpretation of the regulations. St. Luke maintains that for approximately seven years the Cabinet had not treated a hospital's application to transfer existing operating rooms to another location on its campus as a new surgical service.

## KRS 13A.130(1)

■■ St. Luke's first contention is that the hearing officer's decision violates KRS 13A.130, which states in pertinent part:

(1) An administrative body shall not by internal policy, memorandum, or other form of action:

(a) Modify a statute or administrative regulation;

(b) Expand upon or limit a statute or administrative regulation[.]

■■ St. Luke contends that the hearing officer changed the administrative regulation by departing from precedent. This argument disregards the fact that the Cabinet repealed the transfer exemption in June 2002. Further, by claiming that its reliance on earlier decisions by the Cabinet prevents the Cabinet from correctly apply-

ing the law, St. Luke asserts that the hearing officer could not correct a prior erroneous interpretation of the regulation. This court has held otherwise. "[A] public officers failure to correctly administer the law does not prevent a more diligent and efficient officers proper administration of the law, as [a]n erroneous interpretation of the law will not be perpetuated." *Natural Resources and Environmental Protection Cabinet v. Kentucky Harlan Coal Co., Inc.,* 870 S.W.2d 421, 427 (Ky.App.1993), *quoting Delta Air Lines, Inc. v. Revenue Cabinet,* 689 S.W.2d 14, 20 (Ky.1985).

St. Luke cites *Hagan v. Farris,* 807 S.W.2d 488 (Ky.1991), for the rule that an agency is required to apply a long-standing interpretation, even if such interpretation is incorrect. St. Luke argues that the Cabinets treatment of CON applications proposing to move health services on the same hospital campus during the seven years from 1996–2003 is similar to the agency interpretation in the *Hagan* case. However, important distinctions exist that show *Hagan* does not support St. Lukes argument.

The *Hagan* decision held that, even though improper, a "decades old, consistent interpretation" of a liquor license regulation would be applied prospectively. *Id.* at 490. However, the rule in *Hagan* applies only in cases where there is strong, reasonable detrimental reliance on the incorrect, decades-old interpretation of a regulation. Without such reliance, "[a]n erroneous interpretation or application of the law is reviewable by the court which is not bound by an erroneous administrative interpretation no matter how long standing such an interpretation." *Camera Center, Inc.,* 34 S.W.3d at 41.

The first difference between the *Hagan* case and this case focuses on the language "decades old." In *Hagan,* the court implied that the incorrect interpretation was perhaps twenty years old. In this case, St. Luke can argue at best that the interpretation is seven years old.

The second distinction, which focuses on the description "consistent," throws doubt on St. Lukes claim that the interpretation is seven years old. Neither the regulation nor its interpretation was consistent during the seven years between 1996 and 2003 because of the transfer exemption. The transfer exemption was enacted in 1999 and repealed in 2002. As a result, the Cabinet operated under a different regulatory framework during three of the seven years (1999–2002). Such a change in controlling law did not occur in *Hagan.*

The final difference involves strong detrimental reliance. Here, unlike in *Hagan,* St. Luke knew that the transfer exemption had been repealed, but it nevertheless raised a reliance argument based on earlier Cabinet decisions. Such reliance is neither compelling nor reasonable given the change in the regulation. Furthermore, as the circuit court and the Cabinet emphasized, St. Luke has the ability to expand its surgical service on its existing license without obtaining a CON. *See Jewish Hospital Healthcare Services, Inc.,* 932 S.W.2d at 390–91. Thus, St. Luke is not being deprived of the ability to complete its project. Its reliance on *Hagan* is misplaced in all respects.

St. Lukes reliance on KRS 13A.130 is misplaced as well. The hearing officer did not attempt to modify, expand, or limit a statute or regulation. Rather, after being presented with the fact that St. Lukes application did not meet the first SHP criteria, she properly applied the law and denied the application. The hearing officer acted within her authority by departing from the T.J. Samson decision after determining that it was incorrectly decided.

## STARE DECISIS

St. Lukes second argument is that the circuit court erred by not reversing the Cabinets decision on stare decisis grounds. "It is axiomatic that an administrative agency either must conform with its own precedents or explain its departure from them." *In re Appeal of Hughes Coleman,* 60 S.W.3d 540, 543 (Ky.2001). "An agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion, it may cross the line from the tolerably terse to the intolerably mute." *Id.* "Consequently, while the agency may reexamine its prior decisions and depart from its precedents, it must explicitly and rationally justify such a change of position." *Id.*

Here, St. Luke continues to ignore the promulgation of the transfer exemption in 1999 and its repeal in 2002. St. Luke maintains that the Cabinets interpretation has been consistent for seven years and that the hearing officer in its case unilaterally and arbitrarily departed from that precedent. We disagree. The repeal of the transfer exemption changed the administrative rule for obtaining a newly licensed ASC. During the time the exemption was in effect, a CON could be granted for such services without complying with the SHP. After its repeal, a CON application must comply with the SHP.

As the circuit court held, the hearing officer in this case followed the plain language of the regulation. The Cabinet explicitly and rationally justified its change of position by finding that the T.J. Samson decision was incorrectly decided and by noting the repeal of the transfer exemption. Therefore, the doctrine of stare decisis does not require reversal of the circuit court's decision because the examples cited as precedent were decided under previous, different versions of the CON regulations amended over time as the Cabinet molded its CON policy.

## DOCTRINE OF CONTEMPORANEOUS CONSTRUCTION

Finally, St. Luke argues that the circuit court erred by not holding that the Cabinet was bound by its previous applications of the CON regulations under the doctrine of contemporaneous construction. "The doctrine of contemporaneous construction means that where an administrative agency has the responsibility of interpreting a statute that is in some manner ambiguous, the agency is restricted to any long-standing construction of the provisions of the statute it has made previously." *GTE v. Revenue Cabinet,* 889 S.W.2d 788, 792 (Ky.1994). "Practical construction of an ambiguous law by administrative officers continued without interruption for a very long period is entitled to controlling weight." *Id., quoting Grantz v. Grauman,* 302 S.W.2d 364, 367 (Ky.1957).

St. Luke discusses the situation in *Revenue Cabinet v. Humana, Inc.,* 998 S.W.2d 494 (Ky.App.1998), in support of its argument for the application of the doctrine of contemporaneous construction. Both the *GTE* and *Humana* cases involved interpretation of Kentucky tax law. In *GTE,* the Kentucky Supreme Court held that a corporation and its unitary subsidiaries had the right to file a tax return on a combined, unitary basis in reliance on a consistent, 16–year interpretation of Kentucky tax law. *Id.* at 792. Similarly, in *Humana,* the Court of Appeals held that a change in the Revenue Cabinets consistent, 18–year interpretation of a sales and use tax exemption for nonprofit hospitals violated the doctrine of contemporaneous

construction and KRS Chapter 13A. *Id.* at 495.

In both the *GTE* and *Humana* cases, the interpretation had been consistent for almost two decades, unlike the present case. The Cabinet in this case addressed several cases involving transfers of services during the seven years between 1996 and 2003. The application of the SHP to transfers of surgical capacity to newly licensed ASCs changed during those years as the Cabinet shaped its policy. Several transfers were granted without satisfying the SHP criteria. Then, in 1999, the Cabinet passed the transfer exemption to expressly sanction such transfers and to clarify its policy. Once the Cabinet found that proliferation of new licenses was growing too fast, it repealed the exemption, requiring all applications for new licenses to meet the SHP criteria.

John Gray, director of the Office of Certificate of Need testified that policy changes required the promulgation of the exemption in 1999 and its repeal in 2002. He testified that the Cabinets denial of St. Lukes amendment proposal at the August 30, 2002 hearing illustrated the Cabinets new policy. This put St. Luke on notice of the new policy before it filed its CON application and before the T.J. Samson decision. Therefore, St. Lukes detrimental reliance argument based on an allegedly consistent, long-standing interpretation of the CON regulations is unpersuasive. St. Lukes argument for reversal under the contemporaneous construction doctrine is without merit.

## DUE PROCESS

St. Luke also claims that the Cabinet relied on evidence outside the record in finding the CON application did not satisfy other SHP criteria. St. Luke argues that the Cabinet violated due process and that the circuit court committed reversible error by not addressing the alleged due process violation. The circuit court stated, "The Court affirms the final order, finding that the Petitioner's proposal is subject to the SHP. Because the Court upholds the order on that ground, the Court does not review the Cabinet's conclusions that the Petitioner failed to meet the other CON review criteria." As the circuit court held, since St. Luke's CON application is subject to the SHP review criteria and did not satisfy the first criterion, any alleged due process violation arising from the Cabinet's order addressing the remaining criteria is moot.

## SUBSTANTIAL EVIDENCE

"The findings of fact of an administrative agency, which are supported by substantial evidence of probative value, must be accepted as binding by the reviewing court." *Haney,* 698 S.W.2d at 820. Substantial evidence is that which when taken alone or in light of all the evidence has sufficient probative value to induce conviction in the minds of reasonable men. *Fuller,* 481 S.W.2d at 308.

In this case, the hearing officer rendered an 18–page final order with findings of fact and conclusions of law. In her report, the hearing officer relied on St. Luke's evidence, St. Elizabeth's evidence, and a staff report by the Cabinet. St. Luke conceded that its application was inconsistent with the first criterion under the SHP. The fact that the hearing officer evaluated the application under the other four criteria is irrelevant on appeal because inconsistency with one criterion requires the Cabinet to reject the application. The Cabinet staff's report combined with the evidence presented by St. Luke and St. Elizabeth was comprehensive, and absent clear error by the hearing officer, the Cabinet's decision is binding. Therefore, the circuit court did not commit re-

versible error by upholding the Cabinet's decision, which was supported by substantial evidence.

## CONCLUSION

We affirm the order of the Franklin Circuit Court affirming the Cabinet's denial of St. Luke's CON application.

ALL CONCUR.