SEBASTIAN–VOOR PROPERTIES, LLC; Sebastian Properties II, LLC; and Don Sebastian, Appellants

v.

LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT; Lexington–Fayette Urban County Planning Commission; Don Robinson (In his Official Capacity as the Chairperson of the Lexington–Fayette Urban County Planning Commission); Lyle Aten (In his Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); Dr. Thomas M. Cooper (In his Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); Neill Day (In His Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); Linda R. Godfrey (In her Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); Dallam B. Harper, Jr. (In his Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); Steve Kay (In his Official Capacity as a Member of the Lexington–Fayette Urban County Planning

ning Commission); Keith E. Mays (In his Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); Frank Penn, Jr. (In his Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); Randall Vaughn (In his Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission); and Joan Z. Whitman (In her Official Capacity as a Member of the Lexington–Fayette Urban County Planning Commission), Appellees.

No. 2006–SC–000732–DG.

Supreme Court of Kentucky.

Sept. 18, 2008.

Thomas Bruce Simpson Jr., McBrayer, McGinnis, Leslie & Kirkland, Lexington, KY, Counsel for Appellants.

Leslye Mercer Bowman, Director of Litigation, Edward Wayne Gardner, Andrea

Lynne Weddle, Lexington–Fayette Urban County Government, Department of Law, Lexington, KY, Counsel for Appellees.

## MEMORANDUM OPINION OF THE COURT

This planning and zoning case involves the interaction between zoning regulations, subdivision regulations, preliminary subdivision plans or plats, final plats, and private property rights. The main issue before us is whether a governmental entity, which previously improperly permitted development of a subdivision in a manner contrary to applicable zoning statutes and regulations, is now equitably estopped from denying further improper development. We agree with the Court of Appeals' conclusion that equitable estoppel should not apply in this case and, thus, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY.

In 1963, W.H. Sebastian[1] began the development of Donewal Estates, now known as Spindletop Estates, in northern Fayette County. Although the property was outside of Lexington, the city and county participated jointly in planning and zoning matters with the Lexington–Fayette County Planning Commission, now the Lexington–Fayette Urban County Planning Commission. The Appellees are hereinafter referred to as "P & Z."

In February of 1963, P & Z approved a preliminary development plan for 122 one-acre lots. This rural development was zoned A–1, which was an agricultural category that allowed single-family residential developments with a minimum of one-acre lots. The subdivision regulations[2] in effect at that time required final plat approval to be obtained within 18 months of the preliminary development plan or preliminary plat approval. On November 21, 1963, a final plat was approved for 28 of said lots as Unit 1–A. On December 4, 1963, another 12 lots were given final plat approval as Unit 1–B. After 18 months, the preliminary plat expired on the remaining 82 lots. On November 20, 1966, P & Z re-approved the preliminary development plan/preliminary plat for the remaining 82 lots. On December 15, 1966, another 19 lots were approved for recording in a final plat as Unit 1–C.

In 1966, our General Assembly rewrote Chapter 100 of the Kentucky Revised Statutes (KRS) on "Planning and Zoning." Chapter 100 is the current enabling act for cities, counties, and urban-county governments. In 1967, planning and zoning in Lexington and Fayette County also underwent extensive overall revisions. One result was the agricultural zone (A–1) was redesignated A–R, and the minimum residential lot size was established at 10 acres. Nevertheless, over the next 29 years, contrary to the applicable subdivision regulations, P & Z approved final plats in Spindletop Estates for 17 additional *one-acre* lots: 11 lots in 1977, 3 lots in 1989, and 3 lots in 1996.[3] These later approvals involved only the approval of final subdivision plans or final plats for the 17 lots. P & Z has not reapproved a preliminary subdivision plan or a preliminary plat for the remaining 59 acres since 1966.

---

1. The Appellant, Don Sebastian, is the grandson of the original developer. The other Appellants, Sebastian–Voor Properties, LLC and Sebastian Properties II, LLC are apparently family owned entities. The Appellants are hereinafter jointly referred to as "Sebastian."

2. 1962 Lexington Fayette County Subdivision Regulations § 32.161.

3. These last three lots were first approved in 1992 and reapproved in both 1995 and in 1996.

In 2002, Sebastian applied for a preliminary subdivision plan for the remaining 59 acres, none of which has been improved. Following a hearing, P & Z voted to deny approval because: the preliminary plan, reapproved in 1966, had long since expired and was not eligible for reapproval or an extension of its past approval; the plan did not meet the minimum lot size requirement of forty acres for the A–R zone; the lots did not meet minimum setback requirements for the A–R zone; and the lots did not qualify for septic tanks because they did not meet the minimum ten-acre size requirement.

Sebastian filed an appeal/original action in the Fayette Circuit Court contesting P & Z's decision. Sebastian moved for partial summary judgment contending P & Z was estopped from denying the request for reapproval of the preliminary subdivision plan because of the prior approvals given in the last 39 years, and because the prior approvals vested certain property rights in Sebastian. The circuit court disagreed and denied partial summary judgment. Sebastian appealed to the Court of Appeals, which decided that the doctrine of equitable estoppel may be invoked against a governmental entity only under exceptional circumstances and that the facts of this case did not rise to that level. We granted discretionary review and, having fully considered the able arguments of counsel, affirm.

## II. *ANALYSIS.*

Fourscore and two years ago, the United States Supreme Court decided that since individual property rights in land were not absolute, the states could exercise their police powers and regulate land use and zoning if the regulations were reasonably related "to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). Toward that end, as mentioned above, in 1966, the Kentucky General Assembly passed comprehensive planning and zoning statutes compiled in Chapter 100 of the KRS.

■ Thus, any authorized political subdivision that wants to adopt zoning regulations and subdivision regulations must comply with Chapter 100. "When the state has preempted a field, the city must follow that scheme or refrain from planning." *Bellefonte Land, Inc. v. Bellefonte,* 864 S.W.2d 315, 317 (Ky.App.1993). *See also Creative Displays, Inc. v. City of Florence,* 602 S.W.2d 682 (Ky.1980); *City of Lakeside Park v. Quinn,* 672 S.W.2d 666 (Ky.1984); and *Daviess County v. Snyder,* 556 S.W.2d 688 (Ky.1977).

In the case at hand, Sebastian is asking for one-acre residential lots and for a residential development. Without a one-acre residential zone, Sebastian has no grounds for his development in an A–R zone. His remedy is to seek a zone map amendment or a text amendment. KRS 100.211.

Under KRS 100.273, in an urban-county government, the planning commission recommends the subdivision regulations that must be adopted by the legislative body. In some political subdivisions, the planning commission adopts the subdivision regulations *after* the legislative body adopts certain elements of the comprehensive or master plan for the jurisdiction. Even those counties that do not have planning commissions can adopt subdivision regulations through the fiscal court. *See* KRS 100.273(2).

Subdivision plats are approved by the planning commission to insure compliance with the subdivision regulations. KRS 100.277; KRS 100.281(1); *Snyder v. Owensboro,* 528 S.W.2d 663 (Ky.1975).

KRS 100.281 authorizes subdivision regulations to contain a procedure for the submission and approval of preliminary, as well as final, plats. A preliminary plat is a working document, whereas the final plat is the finished product which has been accepted by the planning commission and is to be recorded.... KRS 100.281(1) provides for the recording of final plats only, and for a good reason. Only when the plat becomes final are the parties' rights and expectations fixed. Until a plat becomes final, it cannot be recorded and lots cannot be sold. KRS 100.277.

So what good is a preliminary plat if it is nonbinding? A preliminary plat is a tentative plan which the developer submits to the planning commission for review and acceptance. The planning commission either accepts it or places conditions and changes on the proposal. When both parties agree on all the specifications, reservations, conditions, etc., then there exists a blueprint for a final plat. If the subdivision is built according to the blueprint, or a performance bond is posted, a final plat will be approved and recorded. Only upon final approval by the planning commission does a public or private entity acquire rights in an offer of dedication made on the plat. *See* KRS 100.285(3)(b)....

*Henry Fischer Builder, Inc. v. Magee,* 957 S.W.2d 303, 305 (Ky.App.1997) (citations omitted).

In this case, P & Z would not approve Sebastian's new preliminary plat because it was for one-acre residential lots. Under KRS 100.281(3), subdivision regulations must consider the proposed land use and corresponding lot size. A residential zone allowing one-acre lots would require a proposed subdivision plat to have at least one-acre lots. Sebastian's proposed development of residential one-acre lots does not fit into the current zoning, nor does it seem to fit into any agricultural exemption to the zoning ordinance. Therefore, P & Z could not approve a subdivision preliminary plat that conflicts with the current zoning or the current agricultural exemption.

 Sebastian argued before the trial court, the Court of Appeals, and this Court that regardless of the current zoning and subdivision regulations, P & Z should be equitably estopped from denying the proposed last preliminary plat because of its long history of prior approvals of the residential developments in Spindletop Estates. We disagree.

 While it is true that equitable estoppel can be invoked against a governmental entity in unique circumstances, a court must find that exceptional and extraordinary equities are involved to invoke that doctrine. *Weiand v. Bd. of Trs. of Kentucky Ret. Sys.,* 25 S.W.3d 88, 91 (Ky. 2000). Estoppel is a question of fact to be determined by the circumstances of each case. *Id.* at 91–92 (citations omitted).

The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and

(3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Id. (quoting Electric and Water Plant Bd. of Frankfort v. Suburban Acres Dev., Inc., 513 S.W.2d 489, 491 (Ky.1974)).*

The trial court examined the history of transactions between the parties in determining whether equitable estoppel should apply. The trial court found that the nearly four-decade delay in developing portions of Spindletop Estates created a foreseeable possibility that zoning regulations, applicable governmental personnel and the attitudes of same would change. Furthermore, the trial court cogently noted that Sebastian has not suffered a detrimental reliance because the slow pace of development of the property has been directly attributable to Sebastian's actions (or inactions). Finally, the trial court noted that past improper approval of lots cannot bind the current Commission to ratify an unauthorized act. We agree.

■ Judicial review of an agency decision is limited to the determination of whether the decision was arbitrary, i.e., whether the action was taken in excess of granted powers, whether affected parties were afforded procedural due process, and whether decisions were supported by substantial evidence. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964). Issues of law involving an administrative agency decision will be reviewed on a de novo basis. *Aubrey v. Office of Attorney General,* 994 S.W.2d 516 (Ky.App.1998). The findings of a trial court sitting without a jury will not be set aside unless clearly erroneous. *Weiand,* 25 S.W.3d at 92 (*citing Lawson v. Loid,* 896 S.W.2d 1, 3 (Ky. 1995); CR52.01). The Fayette Circuit

Court here was acting as both a reviewing court in denying the request for plat approval, and a factfinding court on the issue of whether equitable estoppel should apply against P & Z.

We agree with the trial court and Court of Appeals that P & Z's decision to deny the remaining subdivision plan was not arbitrary and was supported by substantial evidence. Upon review of the court's findings of fact on equitable estoppel, we cannot say its findings were clearly erroneous.

■ Sebastian's argument is basically that P & Z cannot be allowed to enforce the zoning regulations now because it did not do so in the past. We agree with the Court of Appeals' previous rejection of this type of argument in the similar case of *St. Luke Hosps., Inc. v. Commonwealth,* 186 S.W.3d 746, 751 (Ky.App.2005). In *St. Luke Hospitals,* the Court of Appeals held that, "[A] public officer[']s failure to correctly administer the law does not prevent a more diligent and efficient officer[']s proper administration of the law, as [a]n erroneous interpretation of the law will not be perpetuated." *Id. (quoting Natural Res. and Envtl. Prot. Cabinet v. Kentucky Harlan Coal Co., Inc.,* 870 S.W.2d 421, 427 (Ky.App.1993)). We agree that a current governmental official is not duty bound to continue the improper acts of predecessors. Moreover, we agree with the Court of Appeals that P & Z did not act arbitrarily when it (belatedly) began to enforce applicable zoning laws—indeed P & Z would have likely acted arbitrarily if it had chosen to refuse to follow applicable zoning laws. Because P & Z's decision was not arbitrary, Sebastian's substantive due process claim must fail. *See, e.g., Bateson v. Geisse,* 857 F.2d 1300, 1303 (9th Cir.1988) ("A substantive due process claim does not require proof that all use of the property has been denied, but rather that the interference with property rights was irrational or arbitrary.") (citation omitted). Hence,

**196**

the trial court and Court of Appeals correctly determined that equitable estoppel was not applicable in this case.[4]

### III. *CONCLUSION.*

For the foregoing reasons, the Court of Appeals' decision is affirmed.

All sitting, except NOBLE, J., MINTON, C.J.; ABRAMSON, SCOTT, and VENTERS, JJ., concur.

SCHRODER, J., concurs by separate opinion in which CUNNINGHAM, J., joins.

Concurring Opinion by Justice SCHRODER.

I agree with the majority opinion on all issues addressed. However, I believe the majority overlooks a problem with the Lexington–Fayette Urban County Government's A–R zone which covers the property in question. The zoning ordinance in question requires a minimum lot size of forty acres for agricultural use. The requirement runs afoul of KRS 100.203(4) and KRS 100.111(2), which set the minimum agricultural parcel at five acres. Under *Bellefonte,* 864 S.W.2d 315, the state has preempted planning and zoning. As a practical matter, does that mean the A–R zone is entirely void, or voidable over five acres? If Sebastian had argued it was void, and we agreed, there would be no minimum and he could have built on the one acre lots. Perhaps the General Assembly should address the forty acre minimum in KRS 100.111(2).

CUNNINGHAM, J., joins this concurring opinion.

---

4. Because this case can be resolved under Kentucky law, we do not find it necessary to address the many cases from other states cited by the parties.