**NURSES' REGISTRY AND HOME HEALTH CORPORATION, (Nurses' Registry), Appellant,**

v.

**GENTIVA CERTIFIED HEALTHCARE CORPORATION, d/b/a Gentiva Health Services; Commonwealth of Kentucky, Cabinet for Health and Family Services, Office of Certificate of Need; and Janie Miller, Secretary for Health and Family Services, in her Official Capacity, Appellees.**

No. 2009–CA–001175–MR.

Court of Appeals of Kentucky.

Aug. 27, 2010.

Ordered Published Oct. 29, 2010.

---

Lisa English Hinkle, Luke Alan Wingfield, Lexington, KY, for appellant.

Mathew R. Klein, Jr., Mark D. Guilfoyle, Reneé L. Alsip, Crestview Hills, KY, for appellee.

Before ACREE, VANMETER, and WINE, Judges.

## OPINION

VANMETER, Judge:

Nurses' Registry and Home Health Corporation (Nurses' Registry) appeals from an opinion and order of the Franklin Circuit Court reversing the decision of the Cabinet for Health and Family Services, Division of Administrative Hearings (Cabinet) remanding the case to the Cabinet. For the following reasons, we affirm.

Gentiva Certified Healthcare Corporation (Gentiva) is a home health service provider that submitted a certificate of need application to the Cabinet seeking to establish a health service in Boyle, Garrard, Lincoln and Mercer counties. At the time Gentiva submitted its application, it held certificates of need to provide health services in sixteen counties, including Boyle, Garrard, Lincoln, and Mercer counties. Gentiva's parent office is located in Lexington, Kentucky; however, it also operates a branch office in Danville, Kentucky that has been in operation for over 12 years, serving Boyle, Garrard, Lincoln, and Mercer counties. Seeking to provide the Danville office with the resources to operate independently from the Lexington office, Gentiva filed a certificate of need application with the Cabinet to request a separate license for the Danville office to serve Boyle, Garrard, Lincoln, and Mercer counties.

After Gentiva submitted its application, Nurses' Registry informed the Cabinet it was an affected party, requested a public hearing on the submitted application and formally challenged the application. Prior to the hearing, Nurses' Registry filed a motion for summary judgment alleging the certificate of need application was not in compliance with the 2007–2009 State

Health Plan for the Commonwealth of Kentucky (State Health Plan). Gentiva filed a cross-motion for summary judgment.

The Cabinet granted Nurses' Registry's motion for summary judgment and denied Gentiva's certificate of need application. The Cabinet held Gentiva's application to be inconsistent with the State Health Plan, which requires a showing of an additional 250 patients in the particular county of license who are in need of health services before a license is issued to establish a health service provider. Gentiva appealed the Cabinet's decision to the Franklin Circuit Court and Nurses' Registry moved to intervene in the appeal, which the Circuit Court granted.

The Franklin Circuit Court reversed the decision of the Cabinet, held Gentiva's certificate of need application to be consistent with the State Health Plan, and remanded the case to the Cabinet. This appeal followed.

■ When reviewing the circuit court's ruling on an agency's decision, an appellate court stands in the shoes of the circuit court and reviews the agency's decision for arbitrariness. *Martin County Home Health Care v. Cabinet for Health and Family Serv's,* 214 S.W.3d 324, 326 (Ky.App.2007) (citations omitted). Questions of statutory interpretation are matters of law and are reviewed *de novo. Id.*

■ Nurses' Registry argues the Franklin Circuit Court erred by reversing the Cabinet's decision. We disagree.

KRS[1] 216B details the licensure and regulation of health facilities. In doing so, it requires any person who seeks to establish a health facility, to first obtain a certificate of need. KRS 216B.061(1)(a). A "certificate of need" is defined as "authorization by the [Cabinet for Health and

Family Services] to acquire, to establish, to offer, to substantially change the bed capacity, or to substantially change a health service as covered by this chapter[.]" KRS 216B.015(8). One of the purposes of requiring health providers to acquire a certificate of need via the Cabinet is "that the proliferation of unnecessary healthcare facilities, health services, and major medical equipment results in costly duplication and underuse of such facilities, services, and equipment; and that such proliferation increases the cost of quality health care within the Commonwealth." KRS 216B.010.

Specifically, KRS 216B.040(2)(a)2.a. requires the Cabinet "[t]o establish criteria for issuance and denial of certificates of need[,]" particularly that "[e]ach proposal approved by the cabinet shall be consistent with the state health plan[.]" The Cabinet found Gentiva's application to be inconsistent with the State Health Plan under the criteria which states, "[a]n application to establish a home health service shall be consistent with [the State Health Plan] if there is a projected need for at least two hundred-fifty (250) additional patients needing home health care services in the county for which the application is made[.]" The State Health Plan defines establishing "a home health service" as establishing "a parent home health agency *or a subunit as defined by Medicare in a county where the applicant is not currently licensed to serve.*" (emphasis added).

The Cabinet determined that since the license held by Gentiva's Lexington office covering Boyle, Garrard, Lincoln, and Mercer counties would be surrendered if the application was approved for the Danville office, Gentiva cannot be said to be "currently licensed" under the language of the State Health Plan. Therefore, if Genti-

---

1. Kentucky Revised Statutes.

va is not "currently licensed" under the definition of the State Health Plan, their actions amounted to establishing a new health facility. Accordingly, the Cabinet concluded that since Gentiva was establishing a new health facility, there must be a projected need of an additional 250 patients seeking home health services in each four counties. As this was not the case, the Cabinet held Gentiva's application to be inconsistent with the State Health Plan and granted Nurses' Registry's motion for summary judgment.

However, the Franklin Circuit Court concluded Gentiva was not establishing a home health facility, and was therefore not required to comply with the showing of 250 additional patients under the State Health Plan. The court reasoned that Gentiva, rather than adding to the total number of home health agencies serving those four counties, was seeking to license a home health agency currently in operation as two separate offices. The court held that since Gentiva's application only sought to separate their existing license and no actual change in health services or location of where health services are provided, the application was consistent with the State Health Plan. The purpose of KRS 216B.010, the court noted, was to prevent the proliferation of unnecessary home health providers under the theory that an abundance of providers increases the cost of health care within the Commonwealth, and costly duplication and underuse of such facilities. Since Gentiva's certificate of need application would not create any additional home health providers, the court held the license to be consistent with the State Health Plan.

Nurses' Registry directs us to *St. Luke Hospitals, Inc. v. Commonwealth*, 186 S.W.3d 746 (Ky.App.2005), in which this court affirmed the Cabinet's decision to deny St. Luke's certificate of need application that sought to establish a freestanding, separately licensed ambulatory surgical center on the campus of its Florence, Kentucky-based hospital. St. Luke's argued since the new facility would contain two operating rooms and two operating rooms on the same campus would be closed, the application did not seek to create additional surgery capacity and therefore the State Health Plan criteria did not apply. Both the Cabinet and circuit court held that St. Luke was establishing a health facility, and must obtain a certificate of need that is consistent with the State Health Plan.

However, *St. Luke* is distinguishable from the case at bar. St. Luke was building and operating a newly established ambulatory surgical center that had yet to be in operation prior to seeking the certificate of need. Here, Gentiva's Danville office has been in operation for over 12 years and already serves Boyle, Garrard, Lincoln and Mercer counties. Furthermore, the issue on appeal in *St. Luke* was the agency's departure from past precedent by denying the certificate of need. In this case, the issue is whether Gentiva is establishing a home health facility under the definition of the State Health Plan.

Since the State Health Plan defines establishing a home health facility as "establishing . . . a subunit as defined by Medicare in a county where the applicant is not currently licensed to serve," a logical conclusion would be that the State Health Plan does not consider the establishment of a subunit in a county where the applicant is currently licensed to serve as establishing a home health agency. We find the reasoning of the Franklin Circuit Court to be sound and hold Gentiva was currently licensed to service the counties of Boyle, Garrard, Lincoln and Mercer, and therefore was not seeking to establish a home health agency as defined by the State

Health Plan. Therefore, Gentiva is not required to show an additional 250 patients in each county in need of health services. Though, as the Cabinet reasoned, Gentiva's Lexington office would surrender its certificate of need covering Boyle, Garrard, Lincoln, and Mercer counties if the Danville office's application were to be approved, we find no authority or precedent to conclude this means Gentiva is not currently licensed to serve those counties, and any such interpretation seems counterintuitive to the plain reading of the State Health Plan.

The opinion and order of the Franklin Circuit Court is affirmed.

ALL CONCUR.