RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0046-MR

PROFESSIONAL HOME HEALTH CARE                      APPELLANT


|  | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE THOMAS D. WINGATE, JUDGE |
|  | ACTION NO. 20-CI-00294 |


COMMONWEALTH OF KENTUCKY
CABINET FOR HEALTH AND FAMILY
SERVICES AND KENTUCKY
DEPARTMENT FOR MEDICAID
SERVICES                                             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, JONES, AND McNEILL, JUDGES.

JONES, JUDGE: Professional Home Health Care (PHHC) appeals the Franklin

Circuit Court's order affirming the final order of the Secretary of the Cabinet for

Health and Family Services (the Cabinet). The circuit court agreed with the

Cabinet that PHHC had been overcompensated for certain Medicaid services and, as a result, recoupment in the amount of $1,062,171 was appropriate. After a thorough review of the record and the law, we affirm.

## I. BACKGROUND

The Cabinet is the state agency authorized to administer Kentucky's Medicaid program under KRS[1] 205.520. PHHC "is a home health care agency that provides in-home care services to Medicaid patients in rural counties in eastern Kentucky through the Cabinet's Home and Community Based Waiver (HCBW or HCB Waiver) Program." (Appellant's Brief at 1.) The HCBW program is designed to assist elderly or disabled individuals in such a way that they may live as independently as possible in their communities rather than reside in a nursing facility.

In 2009, the Cabinet amended the relevant regulation, 907 KAR[2] 1:170, to provide enhanced payments to providers for defined revenue code services. Specifically, the amended version of 907 KAR 1:170, which went into effect July 1, 2009, stated the Cabinet would pay "for a revenue code service provided by a safety net provider a rate equal to the median rate of all local health

_____

[1] Kentucky Revised Statutes.

[2] Kentucky Administrative Regulations.

departments for the revenue code service." 907 KAR 1:170 § 4(1).[3] The same regulation also defined "revenue code services" as "[a]n assessment, reassessment, homemaking, personal care, respite, or attendant care service; or . . . a minor home adaptation." 907 KAR 1:170 § 1(19). Notably absent from the definition of "revenue code services" was the provision of case management services,[4] which were noted as payable at a fixed upper rate limit specified in Section 2 of the regulation.

Despite the language in the regulation, the Cabinet paid PHHC the enhanced rate for case management services for several years afterward. However, on May 2, 2016, the Cabinet informed PHHC that these payments were in error because case management services were not eligible for the enhanced payments assigned to revenue code services in 907 KAR 1:170 § 1(19). The Cabinet then sought recoupment of the excess payments, as authorized by 907 KAR 1:671, for three fiscal years: 2011 ($264,116), 2012 ($385,677), and 2013 ($412,378), for a total of $1,062,171. PHHC appealed the recoupment determination to a hearing officer, arguing that the recoupment was arbitrary after several years of payments,

---

[3] 907 KAR 1:170 was amended in 2016. The current version omits enhanced benefit payments as previously provided in Section 4, and it no longer defines revenue code services in Section 1.

[4] According to the hearing officer's recommended order, "Case management requires that a qualified individual be responsible for locating, coordinating and monitoring a group of services to be provided to a recipient. This involves reviewing the patient's assessments, locating various providers that are able to meet a patient's needs, and checking in at least monthly with the patient." (Record (R.) at 10.)

and that the omission of "case management" from the regulation was a drafting error. PHHC also argued that individuals employed by the Cabinet represented that case management services were reimbursable at the enhanced rate, and the Cabinet should now be equitably estopped from recouping the excess payments. Finally, PHHC argued that the equitable doctrine of laches should apply to prevent the Cabinet from recoupment.

Following an administrative hearing held on June 19, 2018, the hearing officer issued a recommended order upholding the Cabinet's recoupment. The hearing officer pointed out that administrative regulations in Kentucky enjoy a rebuttable presumption of correctness, and that there was "no question" that the regulation in this case was properly promulgated under KRS 13A. (Hearing Officer's Order at 12.) The hearing officer also pointed out that no public comments were filed regarding the regulation, PHHC was fully aware of the language in the regulation, and PHHC had ample opportunity to comment if it thought "case management services" were inadvertently omitted from the regulation.

Regarding PHHC's specific legal arguments, the hearing officer submitted that the rules of construction for interpreting administrative regulations are identical to those for interpreting statutes, and "a statute may not be interpreted at variance with its stated language." (Hearing Officer's Order at 13 (citing

-4-

*Revenue Cabinet, Commonwealth v. Gaba*, 885 S.W.2d 706, 708 (Ky. 1994))).

The hearing officer also found equitable estoppel was not warranted here because it could be applied to government agencies only under a finding of "unique circumstances" involving "exceptional and extraordinary equities." (Hearing Officer's Order at 15 (citing *Sebastian-Voor Properties, LLC v. Lexington-Fayette Urban County Gov't*, 265 S.W.3d 190, 194 (Ky. 2008))). Finally, the hearing officer declined to apply laches as relief, finding that PHHC did not offer any legal support for the premise that laches was applicable against a government agency in Kentucky, nor was there any apparent violation of a statute of limitations. The Secretary of the Cabinet subsequently issued a final order adopting the recommended order, and PHHC appealed the decision to the Franklin Circuit Court. In a thorough ten-page opinion, the circuit court affirmed the Secretary's final order. This appeal followed.

## II. ANALYSIS

We begin by noting our role as the reviewing court of an administrative agency decision is relatively limited. "Judicial review of an agency decision is limited to the determination of whether the decision was arbitrary, *i.e.*, whether the action was taken in excess of granted powers, whether affected parties were afforded procedural due process, and whether decisions were supported by substantial evidence." *Sebastian-Voor*, 265 S.W.3d at 195 (citation omitted).

Pursuant to KRS 13B.150(2), a court sitting in review "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." However, "[w]hen a question of law arises out of an administrative hearing, appellate review is conducted de novo." *Cabinet for Health and Family Services v. Appalachian Hospice Care, Inc.*, 642 S.W.3d 693, 695 (Ky. 2022) (citing *Aubrey v. Off. of the Att'y Gen.*, 994 S.W.2d 516, 519 (Ky. App. 1998)).

PHHC presents four arguments on appeal. First, PHHC asserts that the omission of the words "case management" from the definition of "revenue code services" in 907 KAR 1:170 was the result of a drafting error. Second, PHHC contends it is entitled to equitable estoppel against the Cabinet. Third, PHHC claims it is entitled to a ruling in its favor based on the equitable doctrine of laches. Fourth, and finally, PHHC argues the Cabinet had no right to look back five years because the audit that found the error in case management payments was an audit in name only. We will consider each argument in turn.

First, PHHC contends that "case management" was left out of the definition of revenue code services in 907 KAR 1:170 solely as the result of a drafting error. Despite asserting that it had "overwhelming and uncontroverted evidence" that the omission was a drafting error, the essence of PHHC's briefed argument is to shift the burden of proof, asserting that the Cabinet failed to offer sufficient evidence that the omission was intentional. PHHC's argument entirely

discounts the importance of the language in the regulation. At one point, PHHC goes so far as to argue, "[t]he Cabinet's entire 'proof,' though, is that the definition of 'revenue code service' in the regulation does not include the words case management. However, taken in context, that is not substantial evidence of anything other than that the words are missing." (Appellant's Brief at 13.)

The hearing officer and the circuit court both analyzed this argument based on the plain language of the regulation, as do we. We cannot agree with PHHC that the language of a validly promulgated regulation should be disregarded in favor of a contrary presumption. When interpreting a regulation,

> "the same rules apply that would be applicable to statutory construction and interpretation." *Revenue Cabinet, Com. v. Gaba*, 885 S.W.2d 706, 708 (Ky. App. 1994). The most commonly stated rule in statutory interpretation is that the plain meaning of the statute controls. *Lamb v. Holmes*, 162 S.W.3d 902 (Ky. 2005). We adhere to the plain-meaning rule "unless to do so would constitute an absurd result." *Executive Branch Ethics Commission v. Stephens*, 92 S.W.3d 69, 73 (Ky. 2002).

*Commonwealth v. Estate of Cooper*, 585 S.W.3d 253, 257 (Ky. App. 2019). Furthermore, "[u]nder the plain meaning rule, when the language of a statute [or regulation] is clear and unambiguous, we need not look beyond it for further indications of legislative intent." *Lee v. Kentucky Department of Corrections*, 610 S.W.3d 254, 262 (Ky. 2020) (citing *Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008)).

Most significantly, "when the statute [or regulation] is unambiguous, courts are not free to insert words or add a provision even if it may be just or desirable to do so." *Id.* (citations omitted). The circuit court noted that there is evidence in the record that the Cabinet *considered* including case management services during the drafting process. (R. at 129.) However, the circuit court also correctly stated that we must defer to the plain language of the regulation. Although it is unclear what reason the drafters may have had to ultimately omit case management from the definition of revenue code services eligible for enhanced payments, there is no ambiguity in the omission. Again, the rules of statutory construction apply to regulations. "It is our responsibility to ascertain the intention . . . from the words used in enacting the [regulation] rather than surmising what may have been intended but was not expressed." *Metzinger v. Kentucky Retirement Systems*, 299 S.W.3d 541, 546 (Ky. 2009) (quoting *Flying J Travel Plaza v. Commonwealth*, 928 S.W.2d 344, 347 (Ky. 1996)). For these reasons, the circuit court correctly determined that the language of the regulation did not authorize enhanced payments for case management services, and the Cabinet did not err in recouping such payments.

In its second argument on appeal, PHHC argues the circuit court erred when it denied its claim of equitable estoppel against the Cabinet. Under ordinary

circumstances, equitable estoppel may be applied to a party using the following

elements:

> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Sebastian-Voor*, 265 S.W.3d at 194-95 (citations omitted). However, equitable

estoppel only applies to governmental agencies under "exceptional circumstances."

*J. Branham Erecting & Steel Service Co., Inc. v. Kentucky Unemployment Ins.*

*Comm'n*, 880 S.W.2d 896, 897 (Ky. App. 1994).

PHHC claims it is entitled to equitable estoppel because it received

emailed assurances from staff at the Cabinet that case management would be

included as a revenue code service. However, the circuit court agreed with the

hearing officer that equitable estoppel was not applicable because there were no

"exceptional and extraordinary equities," *Sebastian-Voor*, 265 S.W.3d at 194,

which would be necessary to grant this remedy against a government agency. The circuit court stressed how the plain language of the regulation did not allow "a conflicting response from a Cabinet employee . . . to bind the Cabinet." (R. at 131.) The circuit court also agreed with the hearing officer that the factual circumstances did not warrant equitable estoppel, in that "PHHC should have known that the only way to ensure reimbursement for 'case management services' was to move to have the service included in the regulation." (R. at 131.) Yet PHHC failed to avail itself of this process.

"Estoppel is a question of fact to be determined by the circumstances of each case." *Sebastian-Voor*, 265 S.W.3d at 194. Additionally, pursuant to KRS 13B.150(2), we are not permitted to "substitute [our] judgment for that of the agency as to the weight of the evidence on questions of fact." The hearing officer found the facts of this case, supported by substantial evidence, did not warrant equitable estoppel; this conclusion was thereafter adopted by the Secretary of the Cabinet and upheld at the circuit court. Given our deference to the agency on factual questions, we decline PHHC's invitation to disturb this ruling on appeal.

For its third argument on appeal, PHHC contends the Cabinet should have been barred from recoupment because of the equitable doctrine of laches. In essence, PHHC asserts that the Cabinet knew the language of the regulation from its inception in 2009, yet it "sat on its rights" until 2016 and used an audit as an

excuse to avoid paying what it owed to PHHC. (Appellant's Brief at 24.) "'Laches' in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party." *Plaza Condominium Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996) (citations omitted). "[W]hat is unreasonable delay is a question always dependent on the facts in the particular case." *Id.*

The hearing officer determined that laches did not operate to bar the Cabinet from recoupment, citing *United States v. Summerlin*, 310 U.S. 414, 60 S. Ct. 1019, 84 L. Ed. 1283 (1940), for the general proposition that "laches does not apply to government actions that assert or seek to enforce public rights or interests." (Hearing Officer's Order at 17.) However, PHHC correctly points out *Summerlin* actually says, "*the United States* is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." *Summerlin*, 310 U.S. at 416, 60 S. Ct. at 1020 (emphasis added). The rule in *Summerlin* is specific to the federal government, not the Commonwealth of Kentucky, and a brief search indicates *Summerlin* has never been cited as precedent here. In declining to award relief on the basis of laches, the hearing officer also stated, "PHHC has not cited to Kentucky authority involving the use of laches against the government at all, much less in an administrative proceeding, and the undersigned

-11-

is unaware of any such authority." (Hearing Officer's Order at 17.) The circuit court agreed with the hearing officer that laches should not apply, as PHHC failed to cite applicable Kentucky authority for laches to apply to the state or a state agency, and the circuit court was also unaware of any such authority.

The precedents involving laches applied to the state government are not recent, but they follow the principle announced in *Summerlin*. "Another doctrine of law uniformly recognized in this state and generally is . . . the government cannot be affected by the laches of its agents, or estopped from asserting its rights against an official servant by the acts or omissions of auditors, trustees, supervisors, or other guardians of public rights." *City of Winchester v. Board of Education of City of Winchester*, 182 Ky. 313, 206 S.W. 492, 492 (1918) (citation omitted). The latest iteration of this principle that we have found is in a precedent which is over eighty years old. "[A] municipality or government cannot be affected by the laches of its agents or estopped from asserting its rights because of the acts or omissions of its official servants." *City of Paducah v. Gillispie*, 273 Ky. 101, 115 S.W.2d 574, 576 (1938). *Gillispie* is still authority, although its principles have been read more recently to apply to equitable estoppel, rather than laches:

> But there is an overriding public policy which makes a distinction between the action or nonaction of public officials when acting in a governmental capacity. That policy, in short, is that negligence or dereliction of public

> officials will not work an estoppel against the state or its several agencies and subdivisions. The principle rests upon the broad ground that the public is entitled to greater consideration in weighing the equities than where rights of individuals only are concerned. *City of Paducah v. Gillispie*, 273 Ky. 101, 115 S.W.2d 574. The law is long established and deeply rooted in this and other states that, subject to special exceptions, the doctrine of equitable estoppel has no application to governments, municipal corporations and other agencies when their officials are acting in governmental capacities.

*J. Branham Erecting & Steel Service Co., Inc.*, 880 S.W.2d at 897 (quoting *Maryland Casualty Company v. Magoffin County Board of Education*, 358 S.W.2d 353, 358-59 (Ky. 1962)).

Viewed through the lens of *Gillispie*, then, the Cabinet "cannot be affected by the laches of its agents[.]" *Gillispie*, 115 S.W.2d at 576. Despite the age of the precedent, we are bound by the holding in *Gillispie* until our Supreme Court overturns or modifies it. Pursuant to SCR[5] 1.030(8)(a), "[a]s an intermediate appellate court, this Court is bound by published decisions of the Kentucky Supreme Court." *Kindred Healthcare, Inc. v. Henson*, 481 S.W.3d 825, 829 (Ky. App. 2014). "The Court of Appeals cannot overrule the established precedent set by the Supreme Court or its predecessor Court." *Id*. (citing *Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky. App. 2000)).

---

[5] Rules of the Kentucky Supreme Court.

-13-

However, upon a closer look at *Gillispie* and its progeny, it is possible that *Gillispie*'s holding may have evolved in tandem with the doctrine of equitable estoppel. It may be significant that our former highest court cited *Gillispie* within the context of equitable estoppel and discussed how equitable estoppel does not apply *except* under "special exceptions." *Maryland Casualty Company*, 358 S.W.2d at 358-59. Nonetheless, even if we were to interpret *Gillispie* as allowing laches to apply to a governmental agency under "special exceptions," the hearing officer and circuit court determined that no exceptional circumstances existed in this case in their discussion of PHHC's equitable estoppel argument. We discern no error.

For PHHC's fourth and final argument on appeal, it argues that "[t]he Cabinet has no right to look back five years because this was an 'audit' in name only." (Appellant's Brief at 25.) PHHC's argument appears to be that the Cabinet undertook its audit with some sort of improper motive. The argument appears to be a summary of previous accusations, and it amounts to two paragraphs without any citations to the record or case law. "[W]ithout any argument or citation of authorities, [an appellate] [c]ourt has little or no indication of why the assignment represents an error. It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here." *Hadley v.*

*Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) (internal quotation marks and citation omitted).

### III. CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

John H. Gray
Martha C. Gray
Frankfort, Kentucky

BRIEF FOR APPELLEES:

Blake A. Vogt
Frankfort, Kentucky