RENDERED:  SEPTEMBER 12, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0143-MR

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; ERIC
FRIEDLANDER, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE
CABINET FOR HEALTH AND
FAMILY SERVICES; AND LISA LEE,
IN HER OFFICIAL CAPACITY AS
COMMISSIONER OF THE
DEPARTMENT FOR MEDICAID
SERVICES                                                                      APPELLANTS


|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE SARAH E. CLAY, JUDGE |
|  | ACTION NO. 21-CI-002969 |


CEDAR LAKE RESIDENCES, INC.                                          APPELLEE


OPINION
REVERSING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Appellants (hereinafter collectively referred to as "the

Cabinet") appeal from the Jefferson Circuit Court's January 8, 2024, order that

affirmed the Cabinet's final order of recoupment against Cedar Lake Residences, Inc. (hereinafter "Cedar Lake"), which was not appealed, but also granted declaratory and injunctive relief in favor of Cedar Lake, which is the subject of this appeal. Specifically, the judgment orders the Cabinet to continue to use a substantial compliance standard in its review of Medicaid overpayment disputes and enjoins it from changing the standard "until and unless it articulates a good reason for a change in that policy while accounting for the reliance interests of the providers." After careful review of the briefs, including the *amicus curiae* brief from the Kentucky Association of Private Providers (hereinafter "KAPP"),[1] the record, and the applicable law, we reverse the portions of the order granting declaratory and injunctive relief.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Cedar Lake is a Medicaid provider that performs services through Medicaid Waiver programs. As a Medicaid provider, Cedar Lake has agreed to "[m]aintain the documentation for claims as required by" the applicable Kentucky Administrative Regulations (KAR) and to submit to audits. 907 KAR 1:672, Section 2(6)(a) and (h). The Department for Medicaid Services (hereinafter "DMS"), a division of the Cabinet for Health and Family Services ("CHFS"), is the

---

[1] This Court grants by a separate order KAPP's motion for leave to file an amicus curiae brief pursuant to Kentucky Rules of Appellate Procedure 34(B).

agency responsible for regulating and monitoring Medicaid services in the Commonwealth. One of DMS's duties is to conduct audits on Medicaid providers to identify overpayments.

DMS audited Cedar Lake for services rendered September 2016 through February 2017, and it identified Medicaid overpayments in excess of $8,300.00. Relevant to this action, the overpayment determination was largely based on DMS's conclusion that Cedar Lake had failed to strictly comply with its documentary obligations, set by regulations,[2] when its service records included only one date, versus both a service date and a signature date/date of entry (even if both events occurred on the same date).

Cedar Lake requested a Dispute Resolution Meeting, and, after DMS affirmed the overpayment determination, an administrative hearing.[3] Following the entry of joint stipulations and the submission of briefs, the administrative hearing officer issued findings of fact, conclusions of law, and a recommended order on February 21, 2021.

Relevant to this appeal, the hearing officer, citing four prior final orders issued by the CHFS Secretary that utilized a substantial compliance standard of review for documentation-based overpayments, rejected DMS's

---

[2] 907 KAR 1:835, Section 6 and 907 KAR 12:010, Section 4.

[3] Both proceedings are authorized by 907 KAR 1:671, Sections 8 and 9.

application of a strict scrutiny standard and, concluding that the use of a single date satisfied this lesser standard, reversed the bulk of DMS's overpayment determinations.

DMS filed exceptions to these portions of the recommended order.[4] The CHFS Secretary then issued a final order, filed April 26, 2021. Therein, the Secretary rejected the hearing officer's conclusions of law that substantial compliance was the correct standard of review. Specifically, the Secretary stated:

> Ultimately, this comes down to a single issue. When evaluating a claim for recoupment should the Cabinet, (both Agency and Hearing Officer) apply a strict compliance standard or a substantial compliance standard when reviewing the documentation submitted for services rendered. In other words, do providers have more leeway when submitting records for services rendered to show the services provided or when submitting the records for services rendered must providers strictly follow the documentation guidelines spelled out in the regulations? While other orders might have applied a substantial compliance standard, this order strives to clarify that position. Each Hearing Officer and Medicaid Provider, now, should be on notice of the consistent approach of this Secretary. This standard shall apply in future recoupments and future analysis from Hearing Officers. Each Hearing Officer shall apply a strict compliance standard.

Explaining the change, the Secretary discussed how Medicaid is a cooperative federal-state program, that the rules adopted by the federal Centers for

---

[4] Permissible under Kentucky Revised Statutes (KRS) 13B.110(4) and 907 KAR 1:671, Section 9.

Medicare and Medicaid Services set out broad requirements that Kentucky must comply with to receive federal matching funds, that these rules include recouping overpayments when there is a lack of documentation or insufficient documentation, and how crucial compliance is given Kentucky's reliance on federal funds. And he further explained that, in order to comply with its federal obligations, DMS promulgated appropriate administrative regulations setting out Medicaid providers' documentary obligations and that compliance is mandatory, not directory, under 907 KAR 1:672, Section 2(6). However, the Secretary concluded in the present case that Cedar Lake's use of a single date when both the service and signature occurred on the same day was in strict compliance with the regulations and, adopting the hearing officer's recommendation, agreed that the overpayment determinations for this conduct should be reversed.

In May 2021, Cedar Lake filed the underlying petition for judicial review of the final order,[5] challenging the Cabinet's adoption and use of strict compliance, and it sought a declaration of rights that the proper reviewing standard was substantial compliance as well as an injunction to preclude the Cabinet from changing the standard. In addition to the parties' briefs, the circuit court permitted, over the Cabinet's objection, an *amicus curiae* brief from KAPP to be filed.

---

[5] Authorized by KRS 13B.140.

On January 8, 2024, the circuit court entered the order that is the subject of this appeal. Therein, the court analyzed whether the Cabinet's admitted change in policy – the use of strict compliance instead of substantial – violated Cedar Lake's constitutional rights against arbitrary government action pursuant to Section 2 of the Constitution of Kentucky. Concluding that there was no Kentucky caselaw directly on point, the court adopted the federal test set out in *Encino Motorcars , LLC v. Navarro*, 579 U.S. 211, 221-22 (2016), and stated that to be constitutionally permissible, the Secretary must have provided a reasoned explanation for the change in policy and that explanation must have considered that the agency's long-standing policy may have engendered serious reliance interests.

Applying the *Encino* test, the court concluded that, though the Cabinet had explained the need for the policy change, the abrupt change was arbitrary and thus constitutionally unacceptable because the Cabinet failed to account for the reliance interests of Kentucky Medicaid service providers. Accordingly, the court granted Cedar Lake declaratory relief, ordering that the Cabinet shall continue to use the substantial compliance standard "until and unless it articulates a good reason for a change in that policy while accounting for the reliance interests of providers." However, despite this, the court nevertheless affirmed the final order because the standard used did not impact the results. The Cabinet now appeals.

## ANALYSIS

The sole issue of consequence[6] in this appeal is whether the court

erred by granting Cedar Lake declaratory and injunctive relief. KRS 418.040

allows a plaintiff to seek a declaration of rights when an actual controversy exists.

The statute is remedial in nature with the stated purpose of making "courts more

serviceable to the people by way of settling controversies, and affording relief from

uncertainty and insecurity with respect to rights, duties and relations, and [it is] to

be liberally interpreted and administered." KRS 418.080. On an appeal from a

declaratory judgment, we review the court's findings of fact under a clearly

erroneous standard and its conclusions of law *de novo*. *Big Sandy Co., L.P. v. EQT

Gathering, LLC*, 545 S.W.3d 842, 844 (Ky. 2018) (citing *Baze v. Rees*, 217 S.W.3d

207, 210 (Ky. 2006)).

Before we reach the parties' specific arguments, we shall analyze

whether the court's adoption of the federal *Encino* test to review the Cabinet's

change in policy comports with Kentucky law.

---

[6] The Cabinet devotes a significant portion of its brief to arguing its authority to recoup
overpayments from Medicaid providers based solely on service documentation deficiencies and
that strict compliance is the standard of review mandated by law. However, the order on appeal
did not address these issues, and so neither shall this Court.

The Cabinet's claim that the circuit court erred in permitting an *amicus curiae* brief because such
briefs are not expressly authorized by KRS 13B is preserved. However, we need not resolve the
claim because it is unnecessary given our holding and because the Cabinet's argument fails to
account for the fact that this action was not limited to a KRS 13B judicial review but also
included a claim for declaratory relief under KRS 418.040.

Under Kentucky law, the general rule is that "[j]udicial review of an agency decision is limited to the determination of whether the decision was arbitrary, i.e., whether the action was taken in excess of granted powers, whether affected parties were afforded procedural due process, and whether decisions were supported by substantial evidence." *Sebastian-Voor Props., LLC v. Lexington-Fayette Urban County Gov't*, 265 S.W.3d 190, 195 (Ky. 2008) (citing *Am. Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964)).

And, relevant to this matter, Kentucky courts have recognized that an agency determination that departs from its prior decisions or interpretations of law without explanation is arbitrary. *See In re Hughes & Coleman*, 60 S.W.3d 540 (Ky. 2001), *Revenue Cabinet v. Humana, Inc.*, 998 S.W.2d 494 (Ky. App. 1998), *GTE v. Revenue Cabinet*, 889 S.W.2d 788, 792 (Ky. 1994), *superseded on other grounds by statute as recognized by Miller v. Johnson Controls*, 296 S.W.3d 392 (Ky. 2009), and in *St. Luke Hosps., Inc. v. Commonwealth*, 186 S.W.3d 746 (Ky. App. 2005). As the Supreme Court of Kentucky explained:

> [i]t is axiomatic that an administrative agency either must conform with its own precedents or explain its departure from them. An agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion, it may cross the line from the tolerably terse to the intolerably mute.

Consequently, while the agency may reexamine its prior decisions and depart from its precedents, it must explicitly and rationally justify such a change of position.

*In re Hughes & Coleman*, 60 S.W.3d at 543-44 (citations omitted).

Further, under the contemporaneous construction doctrine, Kentucky law precludes an administrative agency from unilaterally revoking an interpretation of an ambiguous statute or regulation made and applied over a long period of time due to the reliance interests of the governed. *See St. Luke*, 186 S.W.3d at 752 and *Hagan v. Farris*, 807 S.W.2d 488 (Ky. 1991). As the *Humana* Court explained, "[s]uch arbitrary and naked exercise of power is forbidden by the Constitution of Kentucky, §2; the contemporaneous construction doctrine is merely an application of that constitutional provision." 998 S.W.2d at 495.

Accordingly, Kentucky law is directly applicable and the court's deferral to federal precedent was in error. However, because the *Encino* test, a reasoned explanation for the change and consideration of serious reliance interests engendered by a long-standing policy, is consistent with Kentucky law, our analysis may proceed.

Turning to the merits, we begin our analysis with the circuit court's conclusion that the Cabinet failed to account for the reliance interests of Kentucky Medicaid service providers. The Cabinet disagrees with this conclusion, noting that the orders articulating the substantial compliance standard were issued six or

seven years ago under a former CHFS Secretary and that the standard was not firmly entrenched as established law via binding precedent from the courts. It further asserts that, because the documents reviewed predated the final orders applying the substantial compliance standard, the violations at issue could not have arisen from Cedar Lake's reliance on the Cabinet's former policy. And, finally, the Cabinet maintains that the final order sufficiently addressed any applicable reliance interests by making the new standard – strict compliance – have prospective application only.[7]

We agree with the Cabinet. Here, the circuit court presumed, without any analysis, that the prior standard of substantial compliance was a long-established policy that engendered serious reliance interests, but there is little in the record to support this conclusion. Cedar Lake cites to three final orders, the first entered on April 19, 2016, and the last on February 2, 2018, wherein CHFS's then Secretary approved the use of a substantial compliance standard.[8] DMS's audit

---

[7] Cedar Lake's brief is largely unresponsive to these claims. Instead, Cedar Lake focused on its contention that substantial compliance is the correct standard of review and that the Cabinet's change in policy deprived them of this standard in violation of its procedural due process rights and the principles of res judicata. However, none of these issues were decided by the circuit court.

[8] *In re Cornerstone Case Management*, Case No. DPI 15-002912; *In re Independent Opportunities London and Independent Opportunities of Richmond*, Case Numbers DAH DCA 15-2417 and 15-2426; and *In re Independent Opportunities Lake Cumberland*, Case No. DAH DPI 16-001191. Although the appellate record contains the final orders for these cases, albeit not within the approximately 150-page range that Cedar Lake cited, none of the orders state what standard of review was applied (the orders merely summarily adopted and reversed portions of the hearing officer's recommended order). However, the recommended order for *In re*

-10-

reviewed documents created by Cedar Lake in the ten-month period following the April 19, 2016, final order. A precedent of less than a year can hardly be described as long-standing. Even looking beyond the time periods applicable to the current controversy, a total of only five years elapsed from the date of the first final order establishing the substantial compliance standard, April 19, 2016, to the April 21, 2021, final order in this matter, which changed the standard to strict compliance.

In *St. Luke* this Court examined cases in which courts have restricted an agency to its prior long-standing interpretations of law (specifically, *GTE*, *supra*, and *Humana*, *supra*, involving 16-year and 18-year precedents, respectively) and contrasted the almost two decades old precedent at issue in those cases unfavorably with the seven-year construction at issue therein. 186 S.W.3d at 752-53. The court ultimately concluded that the shorter duration in combination

*Independent Opportunities London and Independent Opportunities of Richmond*, Case Numbers DAH DCA 15-2417 and 15-2426, adopted by CHFS Secretary Glisson on April 19, 2016, was included in the appellate record, and it established that substantial compliance applied to documenting Medicaid services under 907 KAR 1:145.

We note that Cedar Lake appended to its brief the recommended order for *In re Independent Opportunities Lake Cumberland*, Case No. DAH DPI 16-001191, and the final and recommended orders for *Community Alternatives Kentucky, Inc. – Elizabethtown v. CHFS*, Case Nos. DAH DPI 15-002859 and 15-002860, a case not cited in its brief. Because these documents were not contained in the appellate record, and thus were not presented for the circuit court's consideration, they are irrelevant to our review of whether the circuit court erred in concluding the Cabinet arbitrarily disregarded its Medicaid service providers' reliance interest in its prior review standard.

with the fact that St. Luke had notice of the change in policy prior to the application in dispute rendered any claim of detrimental reliance unpersuasive.

Here, there is no evidence that the Cabinet provided advance notice of its intention to change its interpretation of the applicable standard for review of Medicaid service providers' compliance with their documentary obligations. However, even considering the impact of the policy change on future audits of Cedar Lake and other Medicaid service providers, given the abstract nature of the asserted precedent and the mere five years the interpretation was in force, we conclude that any claim of detrimental reliance would be unconvincing. Application of a substantial compliance standard does not alone provide any meaningful guidance or instruction on what conduct will be determined sufficient. Accordingly, a provider who deviates from the plain language of the regulations does so at their own peril.

In contrast, in cases where the courts have found a detrimental reliance on agency interpretations, the precedent at issue was far more concrete. *See GTE*, 889 S.W.2d at 792 (historical precedent that multi-corporate businesses satisfying the three unitary tests qualified as "the taxpayer" for purposes of apportioning income under KRS 141.120) and *Humana*, 998 S.W.2d at 494-95 (historical precedent that a for-profit hospital's purchase of prescription medication, prosthetic devices, and physical aids dispensed to patients qualifies for

sales and use tax exemptions under KRS 139.472). For these reasons, we reject the court's conclusion that the Cabinet's adoption of a strict scrutiny standard of review was unconstitutionally arbitrary.

Furthermore, as noted by the Cabinet, even if the prior interpretation was sufficiently long-standing and had engendered reliance interests, the final order expressly provides that the change in standard will be applied prospectively. This notice of the Cabinet's intentions in future proceedings would preclude reasonable reliance on its prior interpretations, undercutting the need for declaratory relief. And, although we share the court's concern that the final order then deviated from this pronouncement by applying strict compliance to the audit on Cedar Lake, we view this as an enforcement issue specific to this case that was ultimately mooted by the fact that the final order found no violation under the stricter standard.

## CONCLUSION

For the foregoing reasons, the portion of the Jefferson Circuit Court's judgment granting Cedar Lake declaratory relief and enjoining the Cabinet is hereby REVERSED.

ALL CONCUR.

-13-

BRIEFS FOR APPELLANTS:

Josh Roberts
Frankfort, Kentucky


*AMICUS CURIAE* BRIEF FOR
KENTUCKY ASSOCIATION
OF PRIVATE PROVIDERS:

Sarah D. Reddick
R. Kenyon Meyer
Louisville, Kentucky

BRIEF FOR APPELLEE:

Paul R. Schurman, Jr.
Makenzie Ackermann
Louisville, Kentucky